594 P.2d 1172

**Gene CORLEY, Petitioner-Appellant,**

v.

**Carol Jo CORLEY, Respondent-Appellee.**

**No. 12062.**

Supreme Court of New Mexico.

May 16, 1979.

Bowen, Shoesmith & Tawney, Mark G. Shoesmith, Alamogordo, for petitioner-appellant.

Fettinger & Bloom, John H. Harrington, Alamogordo, for respondent-appellee.

## OPINION

EASLEY, Justice.

Corley appeals from a court-ordered division of property in his divorce action against Mrs. Corley. We reverse.

Corley challenges several findings of the trial court as not supported by substantial evidence. He also argues that the court erred in failing to find that the community's expenditures exceeded their income during the marriage, and that the court's conclusion that the Belen Farm was community property is not supported by the findings.

The evidence is quite complicated. The relevant unchallenged findings in the trial court are: The parties were married March 21, 1971. Only a division of community property and a determination of separate property was under consideration. Corley Homes, Inc. was in existence at the time of the marriage, and was solely owned by Mr. Corley. This corporation purchased 64.4 acres of land (the Belen Farm) on May 7, 1971 with $22,533.61 of the corporation's funds, by check dated April 30, 1971. On November 15, 1972, Corley Homes, Inc. owed $22,597.43 on the Belen Farm to Albuquerque National Bank. On the latter date, the corporation conveyed the Belen Farm to Burnett Realty. That company assumed the balance owing to Albuquerque National Bank to pay the remaining purchase price for the east 31.315 acres of the Belen Farm, after payment of $7,972 to Corley Homes, Inc. Burnett Realty acquired no equitable interest in the west 33.185 acres.

On November 21, 1975 Burnett Realty conveyed to the parties, as joint tenants, the west 33.185 acres of the Belen Farm. On November 20, 1975 a mortgage and note were executed by the parties in the amount of $25,000 on 15.877 of the west 33.185 acres of the Belen Farm. On January 19, 1976 a mortgage and note were executed by the parties for $10,030 on 17.308 of the west 33.185 acres of the Belen Farm. The money obtained from the January 19, 1976 mortgage was loaned to the Corley Corporation, owned by Glenn Corley, Mr. Corley's

son, in January of 1976. Corley Corporation repaid the January, 1976 mortgage, in part by repaying the bank with a $10,000 Corley Corporation check. Corley Corporation has paid back loans from Corley which came from the mortgage of November 20, 1975 by paying community indebtedness on behalf of Corley in excess of $4,050. Community bills paid from the Corley Homes, Inc. funds consisted of household bills of the parties and personal bills of the parties.

The parties grew hay on the 33.185 acres described above. They trained horses on the land. Mrs. Corley contributed her labors and talents to the improvements on the 33.185 acres consisting of a three-bedroom house, a barn and an old milk barn remodeled into a guest house. Prior to the marriage, the improvements to the Belen Farm included the installation of an irrigation well and pump and land levelling, having total value of $6,813.

■ In determining whether challenged findings have substantial support in the evidence, we review the record with the following rules in mind:

> [W]here there is a conflict in the evidence, upon review, the evidence must be considered in a light most favorable to the successful party, indulging all reasonable inferences to be drawn therefrom in support of the judgment. (Citations omitted.)

*Gray v. J. P. (Bum) Gibbins, Inc.,* 75 N.M. 584, 586, 408 P.2d 506, 507 (1965).

> A reasonable inference is a conclusion arrived at by a process of reasoning. This conclusion must be a rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in the light of common knowledge or common experience. (Citation omitted.)

*Samora v. Bradford,* 81 N.M. 205, 207, 465 P.2d 88, 90 (Ct.App.1970).

> [T]he testimony of a witness, whether interested or disinterested, cannot arbitrarily be disregarded by the trier of the facts * * *.

*Medler v. Henry,* 44 N.M. 275, 283, 101 P.2d 398, 403 (1940). *See also Aragon v. Boyd,* 80 N.M. 14, 450 P.2d 614 (1969); *Frederick v. Younger Van Lines,* 74 N.M. 320, 393 P.2d 438 (1964); and *In re Faulkner's Estate,* 35 N.M. 125, 290 P. 801 (1930).

■ We first consider the challenged findings that Corley commingled his separate and community funds into the corporation funds of Corley Homes, Inc., and that the corporate account of Corley Homes, Inc. was treated by Corley as a personal account and was used for the benefit of the community. Without detailing the evidence here, it is sufficient to say that the record supports these findings and they are upheld.

■ We next consider the findings that on November 21, 1975, the Belen Farm was vested in the parties as joint tenants, and that it was community property. Our review of the record discloses no evidence that the Belen Farm was purchased with community funds. In fact, the unchallenged findings indicate otherwise. There is no finding, nor clear and convincing evidence to support a finding, of transmutation. *Burlingham v. Burlingham,* 72 N.M. 433, 384 P.2d 699 (1963). Thus, the finding that the Belen Farm was community property is not supported by substantial evidence. Corley testified that when he conveyed title to the entire 64.4 acres to Burnett Realty, that company was to pay off the mortgage on the entire farm, and then deed back the west half. There was corroborative testimony. The unchallenged findings of the court are entirely consistent with this testimony, and the court in fact found that Burnett Realty acquired no equitable interest in the west 33.185 acres of the Belen Farm.

Corley testified that he had no intent to own the property jointly with Mrs. Corley and never instructed Burnett Realty to fill out the deed form in that manner. Mrs. Corley paid no consideration for a joint tenancy interest. The deed of November 21, 1975 cannot alone be relied upon as substantial evidence that the Belen Farm was vested in the parties as joint tenants. *Wiggins v. Rush,* 83 N.M. 133, 489 P.2d 641

(1971); *Burlingham, supra; In re Trimble's Estate,* 57 N.M. 51, 253 P.2d 805 (1953). The finding of joint tenancy is not supported by the evidence.

■ The court found that personal bills paid by Corley Homes for 1976, which totalled approximately $21,300, were personal income of Mr. Corley and not an indebtedness of the community. The record indicates that personal bills paid for the year 1976 were paid from the account of Corley Corporation, not from the account of Corley Homes, Inc. Mrs. Corley testified that personal expenses were routinely paid from the account of Corley Corporation for the year 1976. However, Glenn Corley, sole owner of Corley Corporation, Deanna Brady, Corley Corporation's accountant, and Corley, all testified that bills paid in this manner represented advances on Corley's salary, and that Corley was indebted to Corley Corporation in the amount of $11,000. This testimony is undisputed. The court's finding that payments on the couple's personal and community bills, paid from Corley Corporation, represented income rather than indebtedness is contrary to the undisputed testimony and cannot be upheld. *Frederick, supra.*

■ We consider the challenged finding that, "The Petitioner paid all his community bills from the Corley Homes, Inc. funds with the exception of household and personal items which were paid from a joint account at First National Bank of Belen, Account # 11–428–134." The court made two other findings on the same subject: "That the community bills paid from the Corley Homes, Inc. funds consisted of *household bills of the parties and personal bills of the parties*"; and, "That *Corley Corporation* has been paying the Petitioner's personal bills as did the old corporation, Corley Homes, Inc." (Emphasis added.) These two findings were not challenged, and must be accepted by this Court as the facts of the case. *Baca v. Gutierrez,* 77 N.M. 428, 423 P.2d 617 (1967). The challenged finding is in conflict with both unchallenged findings in that it stated that Corley paid *all* his community bills from

*Corley Homes, Inc., except household and personal items.* Therefore, the challenged finding cannot stand in the face of this conflict with the two unchallenged findings which must be taken as true. Also, the record contains no substantial evidence which would support the finding even if it were not in conflict with unchallenged findings.

■ The challenged finding that all monies earned by the parties during the marriage were deposited into the Corley Homes, Inc. accounts nos. 113–816–004 and 11–428–046 is in error. Our review of the record indicates that, at best, there is substantial evidence to indicate that *some* of the monies earned by the parties during marriage were deposited into the Corley Homes, Inc. account no. 11–428–046. The other number does not appear in the record. The finding is not supported by substantial evidence.

■ The challenged finding that, at the time of the marriage of the parties, Corley had a safe in the home of H. A. Mems which contained approximately $2,200 is also in error. Corley testified that, at the time of the marriage, he had between $60,000 and $75,000 in his safe. He further testified that, shortly after the marriage, he bought approximately 20 head of horses, breeding stock, and paid for them with cash from his safe. He also testified that he spent cash from his safe on building materials for his home, which was completed in September of 1971. H. A. Mems testified that he was Corley's bookkeeper and had Corley's safe at his home, that "sometime in the summer of 1971" he had occasion to open the safe and he observed that it contained only $2,400 in cash.

It appears that the trial court inferred from Mems' testimony that there was $2,200 (sic) in the safe *at the time of the marriage.* Mems only testified that there was $2,400 in the safe in "the summer of 1971". The parties were married in March of 1971. There was no evidence that Corley did not have access to his safe between March and the summer of 1971. In the face

of Corley's uncontradicted testimony that he spent cash from his safe for 20 head of horses and for building materials shortly after his marriage, the inference that the $2,400 was all that was in the safe at the time of the marriage is not a reasonable one. Therefore, this finding is not supported by substantial evidence.

With respect to the finding that certain horses are community property, it is important to note that all but two of the horses named were foaled on the Belen Farm during the marriage of the parties. The two horses that were not foaled on the farm, Snooper II and Roan Mare, according to undisputed testimony, were purchased with Corley's separate funds.

As to the offspring of Corley's separately owned horses, they constitute "rents, issues and profits thereof" and are separate property. § 40-3-8(C), N.M.S.A.1978. All the horses are patently the separate property of Corley. *Campbell v. Campbell*, 62 N.M. 330, 310 P.2d 266 (1957).

The trial court found that Corley commingled separate and community funds in the account of Corley Homes, Inc. "The mere commingling of separate property * * * with community property does not change its character from separate to community property, unless the separate property so commingled cannot be traced and identified (citations omitted)." *Burlingham, supra,* 72 N.M. at 441, 384 P.2d at 705. The evidence in this case indicates commingling of separate and community funds. However, the uncontradicted evidence also indicates that community expenditures exceeded community income. These expenditures were shown to come from three different sources: the parties' joint bank account, the account of Corley Homes, Inc. (Corley's corporation), and the account of Corley Corporation (solely owned by Glenn Corley). If the community's expenditures of funds exceeded the income, then any commingling of funds was to the benefit of the community, rather than to the detriment of the community. *See Hayner v. Hayner,* 91 N.M. 140, 571 P.2d 407 (1977).

When evidence on a disputed issue of fact is in the form of uncontradicted figures, the Supreme Court will review it in order to determine if the trial court dealt with it properly. *Moore v. Moore,* 71 N.M. 495, 379 P.2d 784 (1963). As evidence of the parties' income during their marriage, Corley introduced the joint income tax returns filed by the parties from 1971 through 1976. The tax returns were not contradicted. Mrs. Corley introduced into evidence a list of personal expenses of the parties for the year 1976. That list, for that year alone, shows greater expenditures than the total income of the parties for all the years they lived together, as shown on their joint tax returns.

The court refused Corley's requested finding that expenditures exceeded the community income. When requested to do so, it is error for a trial court to refuse to make a finding of fact which is abundantly supported by uncontradicted testimony. *Greenfield v. Bruskas,* 41 N.M. 346, 68 P.2d 921 (1937). The trial court erred in failing to adopt this finding.

The court's unchallenged findings indicate that the community contributed labor and talent to the benefit of Corley's separate property. Mrs. Corley should be given credit for the value of her share of these contributions.

For the above reasons, we reverse the decision of the trial court and remand for consideration by the trial court of the remaining issues, including the value of Mrs. Corley's interest in the community labors which were expended on behalf of the Belen Farm and on behalf of Mr. Corley's horses.

IT IS SO ORDERED.

McMANUS, Senior Justice, and FEDERICI, J., concur.