(637 P.2d 472)
No. 52,641

Thomas F. McGraw, III, *Appellant,* v. Premium Finance Company of Missouri, *Appellee.*

Petition for review denied March 11, 1982.

Opinion filed December 10, 1981.

*Andrew Heyl,* of Heyl & McGraw, Chartered, of Overland Park, for appellant.

*Eldon J. Shields,* of McDonald & Dykes, of Overland Park, and *C. Brooks Wood,* of Hillix, Brewer, Hoffhaus & Whittaker, of Kansas City, Missouri, for appellee.

Before Justice Prager, presiding, Abbott, J., and Harman, C.J. Retired, assigned.

Abbott, J.: The plaintiff, Thomas F. McGraw, III, appeals in this quiet title action from an order granting summary judgment to the defendant, Premium Finance Company of Missouri, and ordering the real estate which was the subject matter of the quiet

title action to be foreclosed and the proceeds from the sale applied to the payment of a judgment lien held by defendant.

This quiet title action was commenced because of a prior mortgage foreclosure action filed by Capitol Federal Savings & Loan Association which sought to foreclose a mortgage and note executed by Harold V. Hauser and to bar the other named defendants including plaintiff from claiming any right, title, interest or lien in the real property that is the subject matter of this action. The defendant, Premium Finance Company of Missouri (Premium), was not a party in the foreclosure action. Premium had previously obtained a judgment against Hauser in Missouri for $19,530.50 plus costs. The mortgage foreclosure action was commenced on March 30, 1978, some three weeks after Premium obtained the Missouri judgment against Hauser. Premium registered its Missouri judgment in Johnson County on July 11, 1978. On August 17, 1978, judgment was entered in the mortgage foreclosure action. The real estate was sold at a foreclosure sale on September 22, 1978. The plaintiff, McGraw, purchased the property at the foreclosure sale. Although disputed, the trial court found that Premium was not aware of the mortgage foreclosure action until a few days after it was completed.

After McGraw learned of Premium's judgment lien, he filed this quiet title action seeking to quiet his title to the subject realty or, in the alternative, to have the court give Premium an opportunity to redeem the property from him. The trial court held that since Premium was not named, joined or made a party to the foreclosure action, it is not bound by or affected by the judgment and that Premium's judgment is a *first* lien. The court ordered the property sold and after payment of taxes and costs Premium was to be paid its judgment, accrued interest and costs before McGraw would receive anything.

Stripping aside the legal issues, the net effect of the trial judge's ruling is that it elevates Premium from near the bottom of the lienholders to the very top. If Premium had been a party to the mortgage foreclosure, it would not have received any of the money McGraw paid for the property. It, of course, would have had an opportunity to bid a larger sum than McGraw bid and could have protected its interest if it had been given an opportunity and had desired to do so. There were three other judgment lien creditors of Hauser's in the mortgage foreclosure action,

none of whom received any money, who would have shared equally with Premium if Premium had protected its lien. Thus, if the trial court correctly decided this case, Premium will move to the head of the line, passing three creditors who chose not to or were unable to protect themselves by bidding what McGraw bid plus the judgment liens. Premium would also move ahead of Capitol Federal and McGraw's father, who held first and second mortgages respectively on the property and who were paid in full for their claims by McGraw. Since the trial court did not require Premium to redeem from McGraw or be barred from asserting its lien, Premium would also move ahead of the purchaser at the mortgage foreclosure sale.

McGraw contends K.S.A. 1980 Supp. 60-2414(*o*) prohibits a second sale of the real estate. His argument is that after the Supreme Court filed its opinion in *Lenexa State Bank & Trust Co. v. Dixon,* 221 Kan. 238, 559 P.2d 776 (1977), the legislature amended K.S.A. 60-2414(*o*) and effectively reversed that decision by barring all second sales regardless of whether a lien was adjudicated or unadjudicated. He also argues that the *Lenexa State Bank* case applies only to unadjudicated mechanics' liens which attached prior to a foreclosure suit being commenced but not recorded until after the foreclosure. We disagree with both arguments.

When *Lenexa State Bank* was decided, K.S.A. 60-2414(*o*) provided:

"Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the six (6) months as hereinbefore provided."

In *Lenexa State Bank,* the Supreme Court considered, along with other issues, the effect of the above statute on two mechanics' liens that were effective prior to the date of a foreclosure judgment *but were not filed* until thereafter. Much of the language in *Lenexa State Bank* dealt with the special nature of mechanics' liens. We are of the opinion, however, that *Lenexa State Bank* is much broader than McGraw suggests. The Supreme Court held:

"The upshot of the three cases is that in order to bar a junior lienor from foreclosing his lien and securing a second sale, if his lien exists when the senior lien is foreclosed and the senior lienor is on notice of its existence, the junior lienor must be made a party to the suit in which the senior lien is foreclosed. In

that way the validity of the junior lien can be established and its priority determined—*i.e.,* the lien can be 'adjudicated.' If that is done the junior lienor may make a meaningful bid at the foreclosure sale or he may redeem. If he does neither he has lost his opportunity to protect his lien, for under the nonresale statute he cannot secure a second sale." 221 Kan. at 245-46.

The language of the opinion does not limit the decision to mechanics' liens. More persuasive, however, is an analysis of the facts in the three cases relied on by the Supreme Court for its holding. *Motor Equipment Co. v. Winters,* 146 Kan. 127, 69 P.2d 23 (1937); *McFall v. Ford,* 133 Kan. 593, 1 P.2d 273 (1931); *Stacey v. Tucker,* 123 Kan. 137, 254 Pac. 339 (1927). Two deal with the rights of junior mortgagees and one deals with a judgment lien. None dealt with mechanics' lienors. *Lenexa State Bank* applies to all junior liens and we reject McGraw's argument to the contrary.

McGraw also argues that in the statutory phrase, "or any judgment or lien inferior thereto," the word "any" means just that—any. The fallacy of that argument is that it is the same one that was, if not specifically then at least impliedly, rejected in *Lenexa State Bank.* The legislature did not change the applicable language as to this part of McGraw's argument.

The legislature has amended the statute in question and it now reads:

"Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, *including unadjudicated junior liens filed after the date of judgment in the district court to foreclose the senior lien against said real estate.*" K.S.A. 1980 Supp. 60-2414(o). (Emphasis denotes new language added to and replacing a portion of the amended statute.)

Our function is to reconcile statutory provisions so as to make them consistent, harmonious and sensible. *E.g., Southeast Kansas Landowners Ass'n v. Kansas Turnpike Auth.,* 224 Kan. 357, 582 P.2d 1123 (1978). It is presumed the legislature acted with full knowledge and information as to judicial decisions with respect to prior law. *E.g., Rogers v. Shanahan,* 221 Kan. 221, 565 P.2d 1384 (1976). Legislative history conclusively shows that the legislature amended the statute in direct response to the *Lenexa State Bank* decision and intended to modify at least part of that decision. The original provision in House Bill No. 2156 would have prohibited a second sale for unadjudicated junior liens filed

after the *petition had been filed.* The House Committee on Judiciary amended that bill by deleting the phrase "petition has been filed" and substituting therefor "date of judgment." The bill was reported out of committee and subsequently enacted in its amended form (L. 1977, ch. 207). As a result, we are of the opinion and so hold that a junior lienholder whose interest is of record prior to the date of judgment and who is not joined as a party in a mortgage foreclosure action is not barred by K.S.A. 1980 Supp. 60-2414(*o*) from a second sale of the real estate subject to the junior lien. The trial court so held and we affirm that part of the decision.

McGraw also contends the *lis pendens* statute (K.S.A. 1980 Supp. 60-2201) prevents a third person who subsequently acquired the interest of one or more of the parties to the mortgage foreclosure action from acquiring an interest in the subject matter of the mortgage foreclosure action under the facts before us. We believe the trial court correctly determined that the purpose of the *lis pendens* statute is to protect the plaintiff's claim; *i.e.,* the relief sought. *Harrod v. Burke,* 76 Kan. 909, 911, 92 Pac. 1128 (1907); *St. John v. Strauss,* 60 Kan. 136, 55 Pac. 845 (1899). The *lis pendens* protection is applicable only while the action is pending. *Moorhead v. Guliford,* 163 Kan. 730, 186 P.2d 275 (1947). Further, a finding that Capitol Federal's foreclosure suit could in any way operate to extinguish or alter defendant's interest in the subject realty is inconsistent with our holding that K.S.A. 1980 Supp. 60-2414(*o*) does not bar a second sale of the subject realty by defendant. The result would not be changed even if McGraw had been the original plaintiff in a suit to foreclose his mortgage. The conflict is not between *lis pendens* and K.S.A. 1980 Supp. 60-2414(*o*). Rather, as noted above, *lis pendens* is operative only pending litigation. If defendant had joined or been joined as a party during the pendency thereof, defendant's interest would have been "adjudicated" and the pendency would have been effective as to it. But because defendant's interest is clearly "unadjudicated" (*i.e.,* unadjudicated in the prior foreclosure action), the suit is no longer pending and thus is ineffective as to defendant.

Having determined that Premium's judgment lien can be foreclosed, we are presented with a question of priority. The issue of priority was not before the court in the *Lenexa State Bank* case

and the court specifically so noted. The issue is properly before us, and we hold the trial court erred in ordering that Premium be allowed to resell the property and be the first paid (after taxes and expenses).

As we understand the law, the general rule is that one who purchases property at a mortgage foreclosure sale has the option of standing in the same position and having the same right as any mortgagee or lienholder whose interest is purchased. *Smith et al. v. Shay et al.,* 62 Iowa 119, 17 N.W. 444, Annot., 73 A.L.R. 638 (1883). Equitable rights are involved; the court has great latitude in seeing that justice is done, and the general rule expressed above may be tempered if bad faith is involved. The general rule is expressed in 55 Am. Jur. 2d, Mortgages §§ 852, 853, 854, as follows:

"Where a senior mortgage has been foreclosed without the claimant of a subordinate title, lien, or interest having been made a party, the purchaser at the foreclosure sale is not without a remedy. Under appropriate circumstances, proceedings de novo to foreclose, or a suit to compel the junior lienholder to redeem, and, upon his failure to do so, to forever bar him from redemption, may be maintained. If the purchaser prefers, he may pay the amount of the junior lien and thereby prevent redemption or foreclosure.

"Generally, when a senior mortgage has been foreclosed and the holder of a junior lien has been omitted as a party, the purchaser at the foreclosure sale occupies the same position as the senior mortgagee. The former rights of the senior mortgagee may be enforced by such purchaser against the junior lienholder to the same extent as they could have been enforced in the original foreclosure had the junior lienholder been made a party thereto. The junior lienholder may defend to the same extent as if the irregular foreclosure had not occurred.

"A purchaser at a foreclosure sale under a senior mortgage, to which a junior mortgagee is inadvertently omitted as a party, may invoke the aid of equity in a suit to which the junior mortgagee is made a party, to compel him to exercise his right of redemption, or else have his right of redemption barred. . . .

. . . .

"As a rule, ordinary negligence, inadvertence, or mistake in failing to include as a party to a judicial foreclosure suit the owner of a junior mortgage or lien will not, in the absence of bad faith, defeat the remedy of strict foreclosure as against such omitted party. So the fact that at the time of commencing the original foreclosure suit the mortgagee had constructive notice of the junior encumbrance or of the omitted party's ownership of it has not been regarded as defeating the subsequent strict foreclosure where the purchase at the sale was made in good faith and in ignorance of the defect of parties. In general, however, the remedy of strict foreclosure will not be available against a junior encumbrancer omitted from the prior foreclosure suit if the omission was intentional on the part of the plaintiff, or, it seems, if the purchaser at the foreclosure sale had notice of the defect of parties. Certainly the remedy of strict foreclosure will not be available if the omission to

make the junior encumbrancer a party to the prior foreclosure suit was made deliberately and in bad faith. Indeed a strict foreclosure cannot be had against a junior encumbrancer omitted from the prior judicial foreclosure and sale if under the circumstances it would be inequitable."

The Kansas Supreme Court considered the position of a senior mortgagee who foreclosed his mortgage and purchased the property at sheriff's sale without making a junior mortgagee a party in *Stacey v. Tucker,* 123 Kan. 137. The junior mortgagee made the same argument that Premium now makes; *i.e.,* that the senior mortgage (lesser estate) merged with the fee title (greater estate) and thus the junior lienholder who was not made a party to the suit advanced to the status of a first lien. Our Supreme Court held that although the general rule is that a lesser estate merges with the greater, it does not apply when not in the best interest of the owner. The court went on to say that whether or not a senior mortgage is merged in the title to the property sold at a mortgage foreclosure sale is to be determined from the intention of the purchaser, and that intention is not to be presumed to be contrary to the owner's apparent interest with respect to others claiming an interest in the property.

In *Bank v. Bank,* 103 Kan. 865, 176 Pac. 658 (1918), a bank as a second mortgage holder took a deed in full satisfaction of its mortgage and assumed a first mortgage. Another bank was holding a third mortgage on the property. The first bank which originally held the second mortgage brought an action to compel the third mortgage holder to redeem or be barred on its lien. The trial court gave the third mortgage holder six months to redeem. The court stated:

"Rule followed that where the equitable rights of the holder of a mortgage, who afterwards procures the fee title of property, require that those interests be kept separate, the mortgage and the fee title do not merge against the will of the holder." 103 Kan. 865, Syl. ¶ 3.

In *United States v. Leckington & Sons, Inc.,* 237 F. Supp. 564 (D. Kan. 1965), the Small Business Association (SBA) foreclosed its first mortgage and failed to join a number of judgment creditors. The SBA brought a quiet title action, as did McGraw in this case, and in the alternative requested that if the judgment lienholders had redemption rights that they be compelled to exercise them within thirty days or be barred from doing so. The federal court held that the judgment lienholders were not elevated to the

status of first lienors as against SBA and gave the judgment holders sixty days to redeem the property or be barred.

We recognize there might be circumstances when it would be necessary for the trial court to order the real estate sold a second time so as to protect a lienholder. If such a sale is deemed necessary, the trial court should set priorities in accordance with this opinion. In most cases a lienholder will be adequately protected by the trial court's setting a redemption period in which the lienholder must redeem the property or be barred from enforcing a lien against the real estate involved. In this case, the trial court did not consider the possibility of setting a redemption period by reason of his having held that Premium was the first lienholder. Thus, we conclude the trial court erred in ordering the property sold without first considering whether Premium would be adequately protected by setting a redemption period in which Premium must redeem the property or be barred from enforcing its judgment lien against the real estate involved in this case.

Affirmed in part and reversed in part with directions either to order a second sale or to set a reasonable redemption period for Premium.