651 P.2d 1203

DEMING NATIONAL BANK,
Plaintiff-Appellee,

v.

Richard WALRAVEN,
Defendant-Appellant.

No. 1 CA–CIV 5325.

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 19, 1982.

Rehearing Denied Sept. 17, 1982.

Mangum, Wall, Stoops & Warden by Robert W. Warden, Flagstaff, for plaintiff-appellee.

Walraven, Lange & Mabery by Richard Walraven, and Paul L. Roberts, Prescott, for defendant-appellant.

OPINION

HAIRE, Judge.

The issue in this appeal is whether the trial court committed error when it allowed the appellee, Deming National Bank (Bank) to foreclose its mortgage against the appellant, Walraven, whose lien on the mortgaged real property was admittedly junior to the mortgage held by the Bank. The propriety of allowing the mortgage foreclosure is questioned by appellant because the Bank had previously brought an independent action on the secured indebtedness, obtained a judgment, executed on that judgment, and then purchased the mortgaged property at the execution sale for the full amount of the secured indebtedness, all without any attempt to foreclose its mortgage lien.[1]

The record below, omitting unnecessary details, shows that the Bank, which was doing business in New Mexico, had duly recorded its latest mortgage covering the subject real property in the Coconino County Recorder's Office in January 1975. Walraven's junior lien on the same real property came into existence in October 1975, when he duly recorded an abstract of judgment in the amount of $8,000 which he had obtained against the mortgagors.

The Bank's initial efforts by legal action to collect on the secured indebtedness began in New Mexico with a suit against the mortgagors. Since the mortgaged real property was situated in Arizona, the New Mexico action made no attempt to foreclose

1. Although there is some confusion in the record as to whether the purchase price at the execution sale was for the full amount of the remaining indebtedness ($42,913.79), or slightly less, since this is an appeal from the granting of summary judgment, we will state the facts in a light most favorable to appellant. *Schmidt v. Mel Clayton Ford*, 124 Ariz. 65, 601 P.2d 1349 (App.1979).

the mortgage, but did result in a June 1977 judgment against the mortgagors for the full remaining balance of the secured indebtedness.

This New Mexico judgment was then forwarded by the Bank to Arizona counsel for collection purposes.[2] Arizona counsel obtained a litigation report relating to the mortgaged property from a title company. Since the litigation report did not reflect the recorded junior lien held by Walraven, the Bank's Arizona counsel decided to reduce the New Mexico judgment to a domestic judgment, and then to have an execution sale relating to the mortgaged property, rather than to bring a new Arizona action to foreclose the mortgage.

As previously indicated, the Bank purchased the mortgaged property at the execution sale for the full amount of the secured indebtedness. The execution sale was held in November 1977. Some five months later, the Bank having in the interim period discovered the existence of the Walraven junior lien, filed the subject action to foreclose its mortgage, naming Walraven and the mortgagors as defendants. After the mortgagors defaulted, both the Bank and Walraven filed motions for summary judgment, and the trial court granted summary judgment in favor of the Bank, thereby allowing it to proceed with the foreclosure action against Walraven.

In this appeal Walraven recognizes that notwithstanding the language of A.R.S. § 33–722, the mere fact that the Bank brought an independent action on the secured indebtedness and obtained a judgment thereon did not, in itself, preclude subsequent action by the Bank to foreclose its mortgage.[3] *See Smith v. Mangels,* 73 Ariz. 203, 240 P.2d 168 (1952). Instead, Walraven's contentions are based upon the additional facts that here, there has been an execution sale, and that at the execution sale the Bank purchased the mortgaged property for the full amount of the secured indebtedness. Thus, Walraven's argument continues, the Bank has exercised a binding election between the two procedures available to it, and the purchase of the mortgaged property at the execution sale for the full amount of the debt has resulted in the extinguishment of both the indebtedness and the mortgage. From the foregoing, Walraven concludes that now the Bank, as an execution sale purchaser, owns the property subject to his lien. *See generally* A.R.S. § 12–1626(A); *Lebrecht v. Beckett,* 96 Ariz. 389, 396 P.2d 13 (1964); 47 Am. Jur.2d *Judicial Sales,* § 268.

■ There can be no quarrel with the general principle that ordinarily when the secured obligation is discharged in full, any mortgage securing that obligation is extinguished and ceases to exist. As stated in *Best Fertilizers of Arizona, Inc. v. Burns,* 116 Ariz. 492, 570 P.2d 179 (1977):

"This Court is committed to the modern doctrine that the debt or obligation secured is the principal thing and the mortgage is only an incident or accessory to it. It follows that whatever extinguishes, discharges or satisfies the debt or obligation will also discharge the mortgage. *Weatherford v. Adams,* 31 Ariz. 187, 251 P. 453 (1926). Where there has been payment of a debt, the mortgage is released. *Valley National Bank v. Milmoe,* 74 Ariz. 290, 297, 248 P.2d 740 (1952)." 116 Ariz. at 493, 570 P.2d at 180.

■ A strict application of the above principle here would result in reversal, since it is unquestioned that in legal contemplation when the Bank paid the full amount of its judgment at the execution sale, the judgment was satisfied and the indebtedness ceased to exist. The Bank, however, urges that Arizona has long recognized an exception to this extinguishment principle, by allowing a subsequent reforeclosure of a mortgage where a junior lienholder or the

---

**2.** The Bank is not represented on this appeal by the same counsel.

**3.** A.R.S. § 33–722 provides:
"§ 33–722. Election between action on debt or to foreclose

If separate actions are brought on the debt and to foreclose the mortgage given to secure it, the plaintiff shall elect which to prosecute and the other shall be dismissed."

holder of any junior interest in the mortgaged property has been discovered after the conclusion of the initial foreclosure action. *See Williams v. Williams,* 32 Ariz. 164, 256 P. 356 (1927); *Johns v. Wilson,* 6 Ariz. 125, 53 P. 583 (1898), *affirmed,* 180 U.S. 440, 21 S.Ct. 445, 45 L.Ed. 613 (1901).

In *Williams v. Williams, supra,* the Arizona Supreme Court specifically held that where a junior lienholder was omitted from the original suit by reason of mistake, a second foreclosure action to deal with the property rights of the junior lienholder could be maintained. The court in that case, quoting Jones on Mortgages, stated:

" 'If the owner of the equity has, through mistake, not been made a party, the mortgagee, who has purchased at a sale, may maintain a second action to foreclose the equity of such owner, and for a new sale, but he cannot recover the costs of the previous sale.... Although a new action is the proper remedy for a foreclosure imperfect through failure to make all persons interested in the equity of redemption parties to the suit, the courts have allowed the original suit to be reinstated upon an amended petition, even after an interval of several years.' " 32 Ariz. at 172–73, 256 P. at 358.

See also the authorities cited, 59 C.J.S. *Mortgages* § 524.

It appears that these authorities furnish ample support for the judgment entered by the trial court allowing the Bank to proceed with the foreclosure of its mortgage in this action. Walraven urges, however, that these decisions should not apply here, since the Bank's initial Arizona action was not a mortgage foreclosure action, but rather the Bank was the purchaser of the mortgaged property at an execution sale resulting from the domesticized New Mexico judgment on the underlying indebtedness. He urges that by executing against the proper-

ty based on that judgment rather than instituting foreclosure proceedings, the Bank was clearly attempting to avoid statutory rights given to junior lienholders under Arizona's mortgage foreclosure statutes. First, we note that the record before this court does not support any inference that the Bank was attempting to avoid any rights which Walraven might have had as a junior lienholder. Rather, it is evident that the failure to foreclose its mortgage lien was the result of the Bank's reliance on the title company's litigation report and its lack of knowledge of the existence of the junior lien. Obviously, in the foreclosure action now authorized by the foreclosure judgment entered in the Bank's favor, the full statutory rights given to a junior lienholder will now be available to Walraven.

We recognize that there are authorities which, under varying factual circumstances, have refused to allow the subsequent foreclosure of a mortgage where the mortgagee has purchased the subject property at an execution sale based upon a judgment for the secured indebtedness. *See* 55 Am. Jur.2d *Mortgages* § 545; authorities cited in an Annot., 122 A.L.R. 485. These authorities have not, however, discussed a factual situation analogous to that presented here, nor referred to or distinguished controlling case law similar to that set forth by the Arizona Supreme Court in *Williams v. Williams, supra.*

When the facts presented on this appeal are considered, we can perceive no logical reason why foreclosure should not be allowed here merely because the Bank initially proceeded by independent action on the indebtedness rather than by foreclosure action. The rationale that the mortgage is extinguished when the secured indebtedness is fully paid is equally applicable to both situations,[4] and unless relief is granted the undiscovered junior lienholder gains un-

---

**4.** Some authorities arrive at the same result by applying a "merger" theory of mortgage extinguishment, that is, that the mortgage is extinguished when there is a merger in the mortgagee of both the legal and equitable estates in the property. *See e.g.,* 55 Am.Jur.2d, *Mortgages* § 545. That theory has not been urged on this appeal. Therefore, we have not set forth

facts relating to the intention of the parties which might be pertinent to a merger theory. For a decision refusing to apply the "merger" doctrine so as to preclude a foreclosure action against a junior lienholder following a prior execution sale which extinguished the indebtedness, see *Reid v. McMichael Holdings, Inc.,* 56 A.2d 435 (N.J.Chan.1947).

warranted superior rights in both instances. There appears to be no logical reason why the junior lienholder's rights should now be allowed to become prior merely because the Bank, based upon an erroneous litigation report, proceeded by execution sale rather than by mortgage foreclosure.

We therefore affirm the trial court's judgment allowing the Bank to foreclose its mortgage.

EUBANK and CONTRERAS, JJ., concur.