806 P.2d 1048

**WESTERN BANK, SANTA FE,**
Plaintiff–Appellee,

v.

**FLUID ASSETS DEVELOPMENT
CORPORATION, Defendant,**

v.

**PHC INDUSTRIAL SUPPLY CO., INC.,**
Defendant–Appellant.

**No. 17767.**

Supreme Court of New Mexico.

Feb. 28, 1991.

Thomas F. McKenna, Albuquerque, for defendant-appellant.

Sommer, Udall & Hardwick, P.A., Jack N. Hardwick, Santa Fe, for plaintiff-appellee.

## OPINION

BACA, Justice.

On motion for rehearing, the opinion previously filed is hereby withdrawn and the

opinion filed this date is substituted therefor.

In this appeal we consider whether a mortgagee first lienholder can use the judicial system to enforce its rights in a foreclosure proceeding after deliberately failing to serve notice upon junior lienholders of record of its intention to hold the foreclosure sale, even though the junior lienholders were parties to a lawsuit brought by the mortgagee and were entitled to actual notice of the sale. We hold such deliberate abuse of judicial procedure constitutes inequitable behavior and the trial court abused its discretion by granting the first lienholder foreclosure against a secondary lienholder, whom it deliberately denied a chance to participate in the foreclosure sale.

## FACTS AND PROCEDURAL HISTORY

In May of 1986, plaintiff-appellee Western Bank, which held a first mortgage on a condominium property of four units owned by the mortgage debtor, Fluid Assets Development Corporation (Fluid Assets), filed a complaint seeking to collect on a promissory note and to foreclose. Western Bank named Fluid Assets and seventeen other parties, including defendant-appellant PHC Industrial Supply Company (PHC), a junior lienholder. On June 6, 1986, PHC appeared generally in the action, answered Western Bank's complaint and cross-claimed against Fluid Assets.

On November 6, 1986, Western Bank filed a motion for default judgment against Fluid Assets and six other defendants. Partial default was entered against Fluid Assets and three other defendants on November 24, 1986. On November 25, 1986, the court entered a partial default and final judgment on the complaint, an order of foreclosure, and an order requiring appointment of a special master. Western Bank did not notify PHC of the order of foreclosure before or after its entry.

Western Bank published a notice of sale stating that the sale would be held in accordance with its judgment against Fluid Assets and three other defaulted defendants, but the notice said nothing about PHC and the remaining defendants, nor was PHC served with a copy of the notice. The foreclosure sale was held on January 6, 1987, with Western Bank bidding its judgment plus the costs of the sale for a total of $244,283.94. Western Bank was the only bidder and the only party at the sale. The special master's sale was confirmed by an order entered January 7, 1987, again without any indication that notice was given to PHC of the special master's report or of Western Bank's request that it be confirmed.

On June 22, 1987, Western Bank requested a trial on the merits to foreclose on the remaining defendants. The trial was held on July 24, 1987, and the trial court issued a letter opinion on August 7, 1987. On August 20th, the court entered its findings and conclusions. The court found Western Bank entitled to foreclosure and gave all subsequent lienholders ten months in which to exercise their rights of redemption. Thereafter, on motion of PHC, the trial court set aside its judgment with respect to PHC only and re-entered judgment against PHC on April 13, 1988.

On appeal PHC maintains that the trial court's letter opinion recited findings in PHC's favor, but that the court granted an incorrect remedy. An extended period for redemption would not compensate PHC for being shut out of the foreclosure sale. Instead, PHC argues Western Bank's interest as mortgagee should have merged with its interest as owner when it purchased the Fluid Assets property at the foreclosure sale. PHC should now hold a first lien on the property. Western Bank responds first that the court rejected PHC's requested finding on the issue of notice, and second, that PHC suffered no loss.

## NOTICE

 This case forces us as a threshold matter to confront a procedural conundrum: whether, in the absence of an express finding of fact by the district court, when it is apparent that the court intended to find a certain fact, and, in fact, the evidence would not allow a contrary finding, this court, in the interest of judicial economy, can adopt the finding of fact.

We rule that, under certain circumstances, we can.

The trial court did not make an official finding of fact regarding the notice issue. It did, however, in its letter opinion to the parties dated August 7, 1987, indicate that it believed that Western Bank had intentionally failed to give PHC notice. Apparently, the failure to make the requested finding of fact was inadvertent.

The rules of civil procedure for the district courts are clear that the trial court's formal findings represent the court's official decision. SCRA 1986, 1–052(B)(1)(g); see *Ulibarri v. Gee*, 106 N.M. 637, 748 P.2d 10 (1987). Those are the findings and conclusions to which our review is to be directed. *Springer Corp. v. Kirkeby–Natus*, 80 N.M. 206, 208, 453 P.2d 376, 378 (1969). Accordingly, any conflict between the trial court's letter of August 7, 1987, and its findings, conclusions, and judgment of August 20 must be resolved in favor of the latter. Moreover, it is a well-settled principle of appellate procedure that an appellate court will not reweigh evidence or determine facts anew, *Duke City Lumber Co. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975); *Watson Land Co. v. Lucero*, 85 N.M. 776, 517 P.2d 1302 (1974), although, under certain circumstances, an appellate court may be in a position to evaluate the weight of the evidence. *See Corley v. Corley*, 92 N.M. 716, 594 P.2d 1172 (1979) (evidence on disputed issue in form of uncontradicted figures).[1]

■ Our review of the record compels us to hold that the district court erred when it failed to adopt PHC's requested finding that it had no notice of the foreclosure sale. The documents in the court file and Western Bank's own testimony at the June 24th hearing amply support the conclusion that the bank intentionally failed to serve notice of the foreclosure action. When asked why the bank failed to give PHC notice, Western Bank's officer responded that it may have been trying to foreclose hastily because a principal shareholder of Fluid Assets had recently declared bankruptcy, and the bank was concerned that Fluid Assets might also seek similar protection. This appears to be an admission of deliberate behavior. Furthermore, at the hearing the bank presented no evidence of mistake or clerical error. Instead, there is only the evidence that Western Bank formally notified some defendants and not others of the foreclosure hearing. Finally, when Western Bank published notice of the foreclosure sale to fulfill the constructive notice requirements of NMSA 1978, Section 39–5–1, it again evidenced its intention to foreclose only upon selected defendants. In reciting the rights affected, Western made no mention of a number of defendant lienholders, including PHC. The district court erred when it failed to find that Western Bank deliberately failed to serve notice on PHC of an impending foreclosure sale. As in *Corley*, error is predicated on failure to make a requested "finding of fact which is abundantly supported by uncontradicted testimony." 92 N.M. at 720, 594 P.2d at 1176. In the interests of judicial economy, we find on appeal that Western Bank failed to serve PHC with the appropriate notice and that this omission was deliberate.[2]

1. In *Corley*, we found that when a finding is requested, the trial court has committed error when it has refused "to make a finding of fact which is abundantly supported by uncontradicted testimony." 92 N.M. at 720, 594 P.2d at 1176.

2. In *Ulibarri*, 106 N.M. at 640–41, 748 P.2d at 13–14, we faced a similar procedural problem. In that case, the trial court made no express findings of fact on an issue, yet made comments from the bench that demonstrated its views. We stated:

In no event * * * may court comments from the bench be substituted for material facts appearing as findings in the decision. It is in this sense that SCRA 1986, 1–052(B)(1)(g) pro-

vides that findings and conclusions appearing outside the single document decision will be disregarded. Such comments may be utilized only as an aid in understanding a decision of the court which is ambiguous.

Although we recognize that, without reference to the bench remarks of the trial court, the findings of fact and conclusions of law are in conflict, we are persuaded that [the disputed fact as found in the bench remarks] is well within the bounds of testimony * * * * The bench remarks make clear why the court concluded the adjustments were required. We do not believe a remand for correction of the findings would result in a different award. Judicial economy must be considered when

■ Relying on *Production Credit Association v. Williamson*, 107 N.M. 212, 755 P.2d 56 (1988), Western Bank intimates that even if it failed to serve notice on PHC, the notice by publication satisfies the statutory scheme. In *Williamson*, this court found a mortgagee's failure to serve notice on a mortgagor of the date of a foreclosure sale was not improper, although it did violate Supreme Court Rule 1-005 that requires all motions be served on parties to a lawsuit. The court determined there had been correct notice by publication according to NMSA 1978, Section 39-5-1, and the specific statute for notice of a foreclosure sale must prevail over the more general requirements of procedural notice in a lawsuit. *Williamson*, 107 N.M. at 213, 755 P.2d at 57. In *Williamson*, however, the mortgagor had approved the trial court's judgment and decree of foreclosure. In this case, PHC was served notice of neither the actual sale *nor* the order of foreclosure. While *Williamson* endorses notice by publication of the actual sale, it does not address the issue here—a separate and prior violation of Rule 1-005 for failure to serve notice of the judgment and order for foreclosure. The consequences of a failure to abide by Rule 1-005's requirement that motions be served on all parties to a lawsuit depend upon the nature of the paper involved. 4A C. Wright & A. Miller, *Federal Practice and Procedure 2d* § 1143 (1987). Courts have considered whether a failure to serve a particular motion is material in affecting the unnoticed party's rights. *See Securities & Exchange Comm'n v. Arkansas Loan & Thrift Corp.*, 297 F.Supp. 73, 77 (W.D.Ark.1969), *aff'd on other grounds*, 427 F.2d 1171 (8th Cir.1970). Here, Western Bank's failure to serve PHC its motion for default and foreclosure within a lawsuit to which PHC was a party caused PHC to lose the opportunity to attend or prepare for the foreclosure sale. *See Quinn Plumbing Co. v. New Miami Shores Corp.*, 100 Fla. 413, 419, 129 So. 690, 693 (1930) (distinguishing the opportunity to bid as one of several rights which, while

we contemplate remand for a merely ministerial or *pro forma* act.

not absolute, are nevertheless recognized in the junior lienholder and are necessarily lost when the lienholder is excluded from a foreclosure sale); *see also Motor Equip. Co. v. Winters*, 146 Kan. 127, 131, 69 P.2d 23, 27 (1937) (court not concerned with mere right to bid, but rather right to bid under circumstances that would protect a valid lien).

## RIGHTS OF JUNIOR LIENHOLDERS AFTER A DEFECTIVE FORECLOSURE

■ It is a black letter proposition that a foreclosure sale is effective only against those lienholders who are given notice. *Springer*, 80 N.M. at 208, 453 P.2d at 378. In *Springer*, the junior lienholder, who held a mortgage on only a part of the total land on which the senior lienholder held a mortgage, wanted to redeem pro tanto, paying only a proportion of the senior lienholder's mortgage. This court held that the junior must pay the entire first mortgage, because its rights were neither "enlarged nor dimished by [a] defective foreclosure." *Id.* at 210, 453 P.2d at 380.

Western Bank cites *Springer* as authority for its argument that regardless of the notice issue, PHC's only right as a junior lienholder was redemption. *Springer*, however, contemplated additional rights: "Thus, the failure to join Springer as a junior lien holder, left its rights, *including* its equity of redemption, unaffected and unimpaired." *Id.* at 208, 453 P.2d at 378 (emphasis added). In addition, in *Springer* the failure to notice the junior lienholder was *unintentional*—a result of a third party's error. Were we to extend *Springer's* holding to the circumstance of intentional failure to notify a junior lienholder, then we would endorse Western Bank's behavior as the norm. Whenever a bank might wish for a speedy foreclosure, it could target some parties for the sale and leave the rest for a later action. Surely the effects of such a holding would be highly prejudicial when the junior lienholders together might hold more equity than the senior, or when the property's value might be at issue.

*Id.* (citations omitted).

In *Moulton v. Cornish*, 138 N.Y. 133, 33 N.E. 842 (1893), a New York court faced with the problem of deliberate exclusion of a junior lienholder first discussed the history of a mortgagee's right to foreclosure. The right stemmed from contract and was immediate and absolute upon default. To mitigate the harshness of these legal procedures, equity gave the debtor a right to redeem his property by discharging the debt. Since this right to redemption clouded the now-in-possession mortgagee's right to sell the property, equity would allow an action by the mortgagee to compel the debtor to exercise his right or forever be barred. In *Moulton*, the court concluded that the first lienholder could *not* compel redemption in strict foreclosure, but must instead go through a second foreclosure sale.

Other courts, faced with the problem of an *un*intentionally excluded second lienholder, have discussed the problem of intentional exclusion. *See McGraw v. Premium Fin. Co. of Missouri*, 7 Kan.App.2d 32, 37, 637 P.2d 472, 476 (1981) (remedy of strict foreclosure not available when junior encumbrancer was omitted intentionally); *Chandler v. Orgain*, 302 S.W.2d 953, 956 (Tex.Civ.App.1957) (when obligor has duty to notify junior lienholder and fails to do so, obligor may become personally liable).

Courts have also viewed the problem of a request for reforeclosure against an omitted junior lienholder as a request to the court to exercise its equitable discretion to relieve the purchaser at a defective foreclosure. *See Deming Nat'l Bank v. Walraven*, 133 Ariz. 378, 379, 651 P.2d 1203, 1204 (Ct.App.1982) (court speaks of "allowing a subsequent reforeclosure"). Finally, courts have held that the mortgagee, in exercising a power of sale by foreclosure, must act in good faith, not only for the benefit of the mortgagor, but also for the subsequent lienholders. *Seppala & Aho Constr. Co. v. Petersen*, 373 Mass. 316, 321, 367 N.E.2d 613, 616 (1977).

■ Taking these principles together, we first suggest what our approach would be to an unintentional failure to include a junior lienholder, and then we apply these principles to the facts here of an intentional omission. Our reasons for this are twofold: the usual case in this area addresses unintentional omission, and many fact patterns will fall beneath that rubric; and the remedy for unintentional omission establishes the baseline of a junior lienholder's rights and puts the remedy for an intentional omission in the correct perspective.

When the mortgagee inadvertently fails to notify a junior lienholder, the mortgagee's equitable rights are not diminished and he or she may reforeclose on the junior. By "reforeclose" we mean that, in the trial court's discretion, the judgment may operate to extinguish the junior lien, with only the right to redeem remaining in the junior lienor, or in a proper case, the senior lienor may be required to conduct a new foreclosure sale at which any junior lienors will be entitled to bid. The omitted junior lienholder, however, should suffer no burden that did not exist at the time of the foreclosure sale to which he or she was entitled notice. The remedy for an inadvertent mistake is the fixing in time of all parties' rights. If Western Bank had not given notice through inadvertence or third-party error, the bank would have been entitled to require PHC to redeem or be foreclosed, but the junior lienholder could not be compelled to pay the costs or expenses of the defective foreclosure. The amount to be paid would have been determined by the mortgage debt, *Quinn*, 129 So. 690, 693, fixed at the time of the foreclosure sale, when the mortgagee would have gained the benefits of occupation. No mortgage or statutory interest could be added to the cost of the redemption from that date.

■ In this case, however, Western Bank intentionally failed to notify a number of junior lienholders. In this regard we find compelling the Arizona Court of Appeals' logic in *Deming*, 133 Ariz. at 379, 651 P.2d at 1204, and hold that Western Bank's request that PHC's lien be declared foreclosed by the previously entered judgment was equitable in nature. Here, Western Bank made no showing of excuse or inadvertence; its behavior was inequitable. Western Bank may not, therefore, have the

advantage of the court's equitable powers. We remand to the district court to reinstate PHC's judgment lien that was unaffected by the defective foreclosure and unaffected by Western Bank's subsequent attempt to have PHC's lien declared foreclosed by virtue of the previous foreclosure decree and sale.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY and FRANCHINI, JJ., concur.

RANSOM, J., dissents and files opinion.

RANSOM, Justice (dissenting).

I respectfully dissent. This Court today holds when a senior mortgagee obtains a default judgment of foreclosure against the mortgagor and bids in the property at foreclosure sale for the amount of indebtedness, all without actual notice to a junior lienholder who is a party to the collection and foreclosure action, the mortgagee is not entitled to a subsequent foreclosure of the junior lien if the failure to give actual notice of the foreclosure judgment and sale was deliberate and intentional. By "deliberate and intentional," I understand the Court to mean deliberate behavior in bad faith. I likely could affirm such a remedy if fashioned by the trial court in equity based upon the premise of bad faith. In fact, the mortgagee here agrees. However, I do not believe we reach that question. The premise of bad faith has not been established.

The majority holds that, "in the absence of an express finding of fact by the district court, when it is apparent that the court intended to find a certain fact, and, in fact, the evidence would not allow a contrary finding, this court, in the interest of judicial economy, can adopt the finding of fact." Then, "In the interests of judicial economy, [the majority finds] on appeal that Western Bank failed to serve PHC with the appropriate notice and that this omission was deliberate."

I do not believe it apparent that the trial court intended to find bad faith. The court commented from the bench, seemingly to correct a statement to the contrary, "that there was an omission, that is clear and *I don't think on this record we can say that we have plumbed the depths of the intent.*" What the court actually said in its letter of August 7, 1987, is: "Whether or not failure to give such notice renders the foreclosure 'defective' I do not pass on.... [T]he failure to give such notice denies [junior lienholders] the opportunity to participate in the bidding process.... It is true that deliberate conduct so calculated carries with it certain possible recourse. *No malintention is attributed * * * *"*

The court specifically refused a finding requested by PHC that the failure to give notice "was deliberately and intentionally done by [the bank]." Clearly, failure of the trial court to find as requested is treated as a finding against the party asserting the affirmative. *Landskroner v. McClure*, 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (citing *Gallegos v. Wilkerson*, 79 N.M. 549, 445 P.2d 970 (1968)). *Landskroner* is the most recent in a long line of cases on this issue. *E.g., Gallegos v. Wilkerson*, 79 N.M. 549, 551, 445 P.2d 970, 972 (1968) (refusal to make a requested finding on a *material* issue is a finding against the party having the burden of proof); *J.A. Silversmith, Inc. v. Marchiondo*, 75 N.M. 290, 294, 404 P.2d 122, 124 (1965) ("Failure to find specifically upon a material point in issue must be regarded as finding such material fact against the party having the burden of proof."). The significance of this rule is to satisfy the requirement that the court must make findings on ultimate facts. *See* NMSA 1986, 1–052(B)(1)(b). Refusal to find the deliberate failure to give notice is simply a finding that PHC, the party asserting the affirmative, did not prove that assertion.

Finally, I disagree that the evidence would not allow a finding contrary to the fact of bad faith. The bank's vice-president was the only witness to testify at trial and, when asked why the bank proceeded with the judicial sale without first obtaining a judgment of foreclosure against junior lienholders, the witness responded that the principal individual involved in the mortgagor corporation had recently filed bankruptcy and it was thought the mortgagor might seek bankruptcy, resulting in prolonged foreclosure litigation. PHC's at-

torney specifically asked the vice-president if he knew whether notice had been sent, to which the vice-president replied, "To my best information and belief, that particular issue was handled by our attorneys." The bank's attorney informed the court that he did not know whether notice had been sent because his partner who handled the proceedings earlier was out of the country. The attorney did inform the trial court that he had discussed the notice issue with several of the other attorneys involved in the case and that at least some had received notice. The notice of sale in the court file had no certificate of service.

In a brief filed by the bank, it agrees that, if it or its attorneys deliberately failed to send notice of the foreclosure sale to PHC, then the bank should not be allowed to foreclose PHC's lien interests. The bank's attorneys, including the one handling the earlier proceedings who had been out of the country at the time of trial, as officers of this Court, specifically represent by their signatures to their brief that "there was no deliberate or intentional failure to give notice of the judicial sale."

Given the above, I would conclude that this Court cannot find, or imply, as the basic premise for its rationale and opinion today, that the bank acted with deliberateness or bad faith.