884 P.2d 803

**BLAZE CONSTRUCTION CO., INC., an Oregon corporation, Plaintiff–Respondent,**

v.

**TAXATION AND REVENUE DEPARTMENT OF the STATE OF NEW MEXICO, Defendant–Petitioner.**

**ARCO MATERIALS, INC., Petitioner–Respondent,**

v.

**TAXATION AND REVENUE DEPARTMENT OF the STATE OF NEW MEXICO, Respondent–Petitioner.**

Nos. 21551, 22132.

Supreme Court of New Mexico.

Oct. 18, 1994.

Tom Udall, Atty. Gen., Frank D. Katz, Sp. Asst. Atty. Gen., Santa Fe, for petitioner in No. 21551.

Tucker Law Firm, Steven L. Tucker, Santa Fe, Margrave, Celmins & Verberg, P.C., Gary Verberg, Scottsdale, AZ, for respondent in No. 21551.

Tom Udall, Atty. Gen., Bruce J. Fort, Sp. Asst. Atty. Gen., Santa Fe, for petitioner in No. 22132.

Miller, Stratvert, Torgerson & Schlenker, P.A., Sharon P. Gross, Kendall O. Schlenker, Alice Tomlinson Lorenz, Albuquerque, for respondent in No. 22132.

## OPINION

BACA, Chief Justice.

This proceeding arises from two consolidated cases decided in the Court of Appeals, *Blaze Construction Co. v. New Mexico Taxation and Revenue Department*, 117 N.M. 362, 871 P.2d 1368 (Ct.App.), *cert. granted*, 118 N.M. 178, 879 P.2d 1197 (1993), and a third case in the same Court, *Arco Materi-*

*als, Inc. v. New Mexico Taxation and Revenue Department,* 118 N.M. 12, 878 P.2d 330 (1994), *cert. granted,* 117 N.M. 802, 877 P.2d 1105 (1994). We granted certiorari in these cases and consolidated them to consider whether federal law preempts imposition of New Mexico gross receipts tax on a contractor's receipts when the contractor enters into an agreement with the Bureau of Indian Affairs ("the BIA") to construct or provide materials for roads built on several New Mexico Indian reservations. In each case the Court of Appeals held that the gross receipts tax could not be imposed. We reverse the Court's decisions and hold that federal law did not preempt imposition of the tax.

## I.

The following facts are pertinent to this proceeding. In *Blaze,* Blaze Construction Company ("Blaze"), an Oregon corporation whose owner is a member of the Blackfeet tribe in Oregon, contracted with the BIA to build roads on several New Mexico Indian reservations.[1] The roads were to be built pursuant to the Federal Lands Highways Program, 23 U.S.C. § 204 (1988).[2] Each tribe helped plan the route the roads would traverse across tribal land and also provided water and some materials for the construction. Blaze was required to hire local reservation residents to work on the road construction.

In April 1986 Blaze requested a ruling from the New Mexico Taxation and Revenue Department ("the Department") on whether the construction projects were taxable. The Department issued a letter ruling in May 1986, informing Blaze that the projects were subject to the tax. Blaze did not contest this ruling but declined to pay the tax. In February 1988 the Department assessed Blaze gross receipts tax in the amount of $222,401, plus penalty and interest amounting to $68,500.

In March 1988 Blaze filed an administrative appeal from the Department's assessment. The Department held a hearing in October 1989 and in January 1990 issued a final decision upholding the validity of the assessment. Blaze appealed this decision to the Court of Appeals.

The Court of Appeals filed an opinion in September 1993, reversing the Department's ruling. The Court rejected the Department's argument that Blaze was a federal government contractor subject to state taxes under *United States v. New Mexico,* 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982). The Court applied the Indian preemption doctrine and held that the state taxes in question were preempted with respect to construction of roads on tribal land. *See* 117 N.M. at 367, 871 P.2d at 1373.

The Court of Appeals addressed the same issue in *Arco.* In that case, Arco Materials, Incorporated ("Arco"), sold paving materials to the BIA for road construction on Navajo lands. The Department assessed gross receipts tax and penalties, and disallowed certain deductions. Arco challenged the assessment of the taxes and penalties and the disallowance of deductions by appealing to the Court of Appeals. Relying on its opinion in *Blaze,* the Court of Appeals reversed the disallowance of deductions and the assessment of penalties. We granted certiorari in both cases and consolidated them because they presented identical issues.

## II.

On appeal, we address whether federal law preempts the imposition of New Mexico gross receipts tax on contractors' receipts when the contractors have entered into agreements with the BIA to either construct or provide materials for roads built on Indian land. The *Blaze* case presents a threshold issue of whether Blaze, an Indian-owned corporation performing work solely on an Indian reservation, is per se exempt from state taxation. We conclude that Blaze is not automatically exempt from state taxation. In *Washington v. Confederated Tribes,* 447 U.S. 134,

---

**1.** The contract called for roads to be built on the Jicarilla Apache Reservation, the Navajo Reservation, the Laguna Pueblo, and the Zia Pueblo.

**2.** The Federal Lands Highways Program provides federal funding to construct and improve Indian reservation roads. 23 U.S.C. § 204(b).

160–61, 100 S.Ct. 2069, 2084–85, 65 L.Ed.2d 10 (1980), the United States Supreme Court upheld a state's power to levy taxes on Indians who lived on a reservation but had no tribal affiliation with the particular reservation Indians among whom they lived:

> [T]he mere fact that nonmembers resident on the reservation come within the definition of "Indian" for purposes of the Indian Reorganization Act ... does not demonstrate a congressional intent to exempt such Indians from State taxation....

> Nor would the imposition of Washington's tax on these purchasers contravene the principle of tribal self-government, for the simple reason that nonmembers are not constituents of the governing Tribe. For most practical purposes those Indians stand on the same footing as non-Indians resident on the reservation.... We find, therefore, that the State's interest in taxing these purchasers outweighs any tribal interest that may exist in preventing the State from imposing its taxes.

447 U.S. at 161, 100 S.Ct. at 2085.

In this case, Blaze is owned by a member of the Blackfeet tribe. The road construction is taking place on Indian reservations other than the Blackfeet reservation. Under *Washington*, Blaze is not per se exempt from paying taxes for the road construction.

We note that two opinions of our Court of Appeals have been read to stand for the proposition that "tribal affiliation is of no moment when determining the taxability by states of an Indian on a reservation." *Fox v. Bureau of Revenue*, 87 N.M. 261, 263, 531 P.2d 1234, 1236 (Ct.App.), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975), *cert. denied*, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976), *overruled by New Mexico Taxation and Revenue Department v. Greaves*, 116 N.M. 508, 864 P.2d 324 (Ct.App.1993); *see also Eastern Navajo Indus., Inc. v. Bureau of Revenue*, 89 N.M. 369, 373–74, 552 P.2d 805, 809–10 (Ct.App.) (suggesting that similar rule applies in corporate context), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 810 (1977). Both *Fox* and *Eastern Navajo* were decided prior to *Washington*, and we disapprove any language in these cases to the extent that it can be read as inconsistent with our holding today.

### A.

■ We next address whether the Court of Appeals erred by deciding that the Indian preemption doctrine applied in *Blaze* and in *Arco*. Citing *United States v. New Mexico*, the Department argues that the state may tax entities that contract with the federal government. The Department asserts that Blaze and Arco contracted with the federal government by contracting with the BIA and are thus liable to pay state taxes without the necessity of applying the Indian preemption doctrine to determine whether the tax is preempted.

The Court of Appeals disagreed with the Department's argument and concluded that the BIA is "a partner in the tribes' performance of the integral governmental functions of improving the transportation system and facilitating economic development." 117 N.M. at 364, 871 P.2d at 1370. The Court of Appeals held that "[u]nder these circumstances ... the fact that Blaze's contracts ... were with the BIA, rather than the tribes, has no effect on the necessity for performing [Indian] preemption analysis." 117 N.M. at 364, 871 P.2d at 1370–71. We disagree with this holding and conclude that the Indian preemption doctrine is not applicable to the facts of these cases.

As the Department correctly points out, the U.S. Supreme Court has only applied the Indian preemption doctrine in cases where contracts were made or business was conducted directly with Indian tribes or tribal members. *See Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 166, 109 S.Ct. 1698, 1702, 104 L.Ed.2d 209 (1989) (applying doctrine where state imposed severance taxes on production of oil and gas on reservation land); *Ramah Navajo Sch. Bd. v. Bureau of Revenue*, 458 U.S. 832, 834, 102 S.Ct. 3394, 3396, 73 L.Ed.2d 1174 (1982) (applying doctrine where state imposed gross receipts tax on receipts that non-Indian construction company, hired to build reservation school, received from tribal school board); *White Mountain Apache Tribe v. Bracker*, 448 U.S.

136, 137–38, 100 S.Ct. 2578, 2580–81, 65 L.Ed.2d 665 (1980) (applying doctrine where state attempted to impose motor carrier license and use fuel taxes to company engaged in commerce on Indian reservation); *Central Mach. Co. v. Arizona Tax Comm'n*, 448 U.S. 160, 161, 100 S.Ct. 2592, 2594, 65 L.Ed.2d 684 (1980) (applying doctrine where state taxed sale of farm machinery to Indian tribe); *McClanahan v. Arizona Tax Comm'n*, 411 U.S. 164, 165, 93 S.Ct. 1257, 1258, 36 L.Ed.2d 129 (1973) (applying doctrine where state imposed personal income tax on reservation Indians who derived entire income from reservation sources); *Warren Trading Post Co. v. Arizona Tax Comm'n*, 380 U.S. 685, 685–86, 85 S.Ct. 1242, 1242–43, 14 L.Ed.2d 165 (1965) (applying doctrine where retail trading post was doing business with Indians on Navajo Reservation). In the cases at bar, Blaze and Arco contracted directly with the BIA, an agency of the federal government, rather than with an Indian tribe or with individual tribal members. Because Blaze and Arco contracted with a federal government agency rather than with Indian tribes or tribal members, the Indian preemption doctrine is inapplicable, and Blaze and Arco are subject to state taxes, just as any other federal government contractor would be.[3] *See New Mexico*, 455 U.S. at 735 & 741, 102 S.Ct. at 1383 & 1386.

In *Blaze*, the Court decided that *United States v. New Mexico* did not apply. In so holding, the Court of Appeals conceded that the BIA was a federal agency. Nonetheless, the Court decided that it was necessary to apply Indian preemption analysis because the agency "ha[d] a special relationship with the Indian tribes" and, in essence, was "a partner in the tribes' performance of ... integral governmental functions" such as road building. 117 N.M. at 364, 871 P.2d at 1370. We are unpersuaded by this rationale. The BIA is not a partner or agent of an Indian tribe for the purpose of entering into agreements with contractors to construct roads on Indian land. To equate Indian tribes and the BIA in this way ignores the fact that tribal governments have retained an element of sovereignty separate and distinct from the federal government. *See Bracker*, 448 U.S. at 142, 100 S.Ct. at 2582 (recognizing that while Indian tribes do not recognize full attributes of sovereignty, they nonetheless have power to govern their own internal and social relations); Felix S. Cohen et al., *Handbook of Federal Indian Law* 232 (Rennard Strickland & Charles F. Wilkinson eds., 1982) (noting that Indian tribes have consistently been recognized as separate independent political communities that "exercise powers of self government"). While the BIA acts in an administrative capacity on the tribe's behalf, it is not synonymous with the tribe; it exercises federal, rather than tribal, authority when entering into contracts for road construction on tribal land. We hold that the Court of Appeals erred in concluding that the BIA acted as a tribal partner when contracting for the construction of the roads and in applying the Indian preemption doctrine to the instant cases.

## B.

Although we hold that the Court of Appeals erred in deciding that application of the doctrine was necessary, we address whether the Court misapplied the doctrine. The Department argues that the Court of Appeals erred because it relied on the "balancing of interests" approach from *Bracker* and *Ramah* rather than on the "legislative intent" approach in *Cotton Petroleum* that allegedly replaced the "balancing of interests" approach. We do not agree with the Department that *Cotton Petroleum* supplanted *Bracker* and *Ramah* with a new test, al-

---

**3.** The *New Mexico* case held

[T]ax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities.... This view, we believe, comports with the principal purpose of the immunity doctrine, that of forestalling "clashing sovereignty," by preventing the States from laying demands directly on the Federal Government.

. . . .

... [Consequently,] [a]llowing the States to apply use taxes to [entities contracting with the federal government] does not offend the notion of federal supremacy.

455 U.S. at 735 & 741, 102 S.Ct. at 1383 & 1386 (citations omitted).

though we do believe that *Cotton Petroleum* modified the *Bracker/Ramah* test.

To understand the current Indian preemption test, it is helpful to examine the doctrine. The historical development of the Indian preemption doctrine began to take shape in 1965, when, in *Warren*, the Court addressed whether the State of Arizona could levy a 2 percent tax on the gross proceeds of sales or gross income of a retail trading business operating on the Navajo Indian Reservation in Arizona. 380 U.S. at 685–86, 85 S.Ct. at 1242–43. In holding that the tax could not be imposed, the Court relied on the pervasive effect that federal legislation and regulations had over Indian trading:

> These apparently all-inclusive regulations and the statutes authorizing them would seem in themselves sufficient to show that Congress has taken the business of Indian trading on reservations so fully in hand that no room remains for state laws imposing additional burdens upon traders....
>
> And since federal legislation has left the State with no duties or responsibilities respecting the reservation Indians, we cannot believe that Congress intended to leave to the State the privilege of levying this tax.

*Id.* at 690–91, 85 S.Ct. at 1245–46. Thus, in its early stages the Indian preemption doctrine relied on the pervasiveness of federal statutes and regulations when determining whether a state tax was preempted.

The doctrine evolved further in 1973, when the Court decided *McClanahan*. In that case, the State of Arizona tried to impose a personal income tax on Indians who derived their entire incomes from reservation activities. 411 U.S. at 165, 93 S.Ct. at 1258. Consistent with *Warren*, the Court held the tax invalid because it "interfered with matters which the relevant treaty and statutes leave to the exclusive province of the Federal Government and the Indians themselves." *Id.* The Court considered the historical notion of Indian sovereignty, stating that " '[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history,' " *id.* at 168, 93 S.Ct. at 1260 (quoting *Rice v. Olson*, 324 U.S. 786, 789, 65 S.Ct. 989, 991, 89 L.Ed. 1367 (1945)),

"[and] provides a backdrop against which the applicable treaties and federal statutes must be read." *Id.* at 172, 93 S.Ct. at 1262.

The Court developed the doctrine further in *Bracker* and *Ramah*. In *Bracker*, the Court noted that "congressional authority and the 'semi-independent position' of Indian tribes have given two independently related barriers to the assertion of state regulatory authority over tribal reservations and members." 448 U.S. at 142, 100 S.Ct. at 2583. State regulatory authority "may be preempted by federal law" or by " 'the right of reservation Indians to make their own laws and be ruled by them.' " *Id.* (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959)). The Court articulated a three-part "balancing of interests" test, stating that the determination of whether an exercise of state authority was preempted "called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake." *Id.* at 145, 100 S.Ct. at 2584. *Ramah* reaffirmed the principles articulated in *Bracker* and, applying those principles, held preempted a state gross receipts tax on the revenue a non-Indian construction company received for the construction of a school on a reservation. 458 U.S. at 834, 102 S.Ct. at 3396.

In *Cotton Petroleum*, the case that the Department claims changed the test articulated in *Bracker* and *Ramah*, the Court addressed whether the State of New Mexico could impose severance taxes on the production of oil and gas "by non-Indian lessees of wells located on the Tribe's reservation." 490 U.S. at 166, 109 S.Ct. at 1702. The Court reviewed the principles of *Bracker* and *Ramah* but held that the tax was not preempted. The Court noted that "[u]nder current doctrine, ... a State can impose a nondiscriminatory tax on private parties with whom the United States or an Indian tribe does business, even though the financial burden of the tax may fall on the United States or tribe." *Id.* at 175, 109 S.Ct. at 1707. The Court gave considerable attention to the legislative history underlying the relevant congressional acts and concluded that "there is ... simply no history of tribal independence

from state taxation of [oil and gas leases] to form a 'backdrop' against which [the legislation] must be read." *Id.* at 182, 109 S.Ct. at 1710.

After studying the cases giving rise to the Indian preemption doctrine, we disagree with the Department that the United States Supreme Court abandoned the three-part balancing test articulated in earlier cases when it decided *Cotton Petroleum.* The Court applied the balancing test but reached a different result based upon factual distinctions between *Cotton Petroleum* and the earlier cases of *Bracker* and *Ramah.* *See Cotton Petroleum,* 490 U.S. at 183–86, 109 S.Ct. at 1711–13. *Cotton Petroleum* did, however, modify the three-part balancing test in certain respects. We hold that the Court of Appeals erred by not taking into account these modifications in applying the three-part test in *Blaze* and *Arco.*

At the outset, we note that we agree with several points made by the Court of Appeals at the beginning of its discussion of the application of the Indian preemption doctrine. We agree that when "deciding whether state taxation of on-reservation· activity has been preempted, we look primarily at congressional intent" and that our nation's history of tribal sovereignty provides a necessary backdrop to the analytical process. 117 N.M. at 365, 871 P.2d at 1371 (citing *Cotton Petroleum,* 490 U.S. at 176, 109 S.Ct. at 1707). The Court of Appeals correctly concluded that although "the Indian Financing Act and other federal statutes evince a federal interest in encouraging tribal self-sufficiency and promoting economic development," this by itself is insufficient for finding preemption. *Id.* The Court of Appeals concluded that balancing state, federal, and tribal interests was necessary. However, the Court of Appeals erred in applying the "balancing of interests" test.

■ The Court first erred by holding that the state gross receipts tax was preempted because "the State has identified absolutely no interest in the [road construction] activity." *Id.* As part of the preemption analysis, *Bracker* and *Ramah* both held the state must identify a regulatory function or service performed that would justify the tax. *Ramah,*

458 U.S. at 843–44, 102 S.Ct. at 3401–02; *Bracker,* 448 U.S. at 150, 100 S.Ct.· at 2587. Both cases held that the state's general interest in raising revenue through taxes was not sufficient justification for imposing the tax. *Ramah,* 458 U.S. at 845, 102 S.Ct. at 3402; *Bracker,* 448 U.S. at 150, 100 S.Ct. at 2587. However, *Cotton Petroleum* abandoned the quid pro quo theory of taxation articulated in *Bracker* and *Ramah.* In *Cotton Petroleum,* the Court rejected the corporation's argument that "tax payments by reservation lessees far exceed[ed] the value of services provided by the State to the lessees." 490 U.S. at 189, 109 S.Ct. at 1714. The Court noted that "the relevant services provided by the State include those that are available to the lessees and the members of the Tribe off the reservation as well as on it." *Id.* The Court explained that taxation is primarily used to raise revenue for the common good:

"[T]here is no requirement under the Due Process Clause that the amount of general revenue taxes collected from a particular activity must be reasonably related to the value of the services provided to the activity.... 'Nothing is more familiar in taxation than the imposition of tax upon a class or upon individuals who enjoy no direct benefit from its expenditure....

A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes.'"

*Id.* at 190, 109 S.Ct. at 1715 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 491, n. 21, 107 S.Ct. 1232, 1245, n. 21, 94 L.Ed.2d 472 (1987) (quoting *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 521–23, 57 S.Ct. 868, 878–79, 81 L.Ed. 1245 (1937) (citations and footnote omitted))).

Applying *Cotton Petroleum* to *Blaze* and *Arco,* we conclude that it was irrelevant that the state did not identify specific services or regulatory functions provided in exchange for

taxes collected. Taxes are not imposed in exchange for services provided. Instead, taxes are a means of distributing the cost of government among the general population, including its Indian citizens. The state thus had an interest in taxing for the common good—i.e., the welfare of its entire populace, Indian and non-Indian alike. We hold that the interest in raising revenue was sufficient to justify levying the gross receipts tax on Blaze and on Arco. We hold that the Court of Appeals erred by disregarding *Cotton Petroleum* and holding that state taxes must be directly linked to a state interest in the activity being taxed.

The Court of Appeals also erred by holding that the gross receipts tax was preempted because the tax "indirectly place[d] a burden on the federal and tribal interests in improving the transportation system on reservations and in fostering the economic well-being of tribal members." 117 N.M. at 366, 871 P.2d at 1372. The Court reached this conclusion because it found that if contractors were required to pay state taxes for federal road-building projects on an Indian reservation, "the cost per mile of building roads on reservations [would] increase ... [and] fewer roads or smaller portions of roads [would] be built or improved for the same amount of money." *Id.* The Court also found that the taxes would leave "less money available with which to pay wages to tribal members working on the road projects." *Id.*

 We conclude that the Court of Appeals erred by using these facts to justify its conclusion that the state gross receipts tax was preempted. First, the Court's factual findings contradict the findings of the Department, which, after hearing the evidence, found no showing that the tax impaired tribal interests. It is well established that an appellate court will not find facts on appeal. *See Western Bank v. Fluid Assets Dev. Corp.*, 111 N.M. 458, 460, 806 P.2d 1048, 1050 (1991). In this case the Court of Appeals violated this principle by finding "commonsense facts" that directly contradicted the findings of the Department. Second, even

were we to assume that the facts found by the Court of Appeals were true, these facts would not justify preemption under *Cotton Petroleum*. In that case the Supreme Court held that indirect, insubstantial, or marginal burdens on tribal interests do not support a claim that a state tax is preempted. 490 U.S. at 186–87, 109 S.Ct. at 1712–13. As the Court of Appeals conceded in *Blaze*, any burdens on tribal interests caused by the state taxation of contractors is indirect, "unlike a situation in which the tribe's own economic activity is being taxed."[4] 117 N.M. at 366, 871 P.2d at 1372. Under *Cotton Petroleum*, this indirect burden was insufficient to preempt the state gross receipts tax.

## III.

In conclusion, we hold that the Court of Appeals misapplied the Indian preemption doctrine, as modified by *Cotton Petroleum*. We reverse the Court's decision in *Blaze* and reinstate the Department's decision and order assessing taxes, penalties, and interest against Blaze in the total amount of $291,008.53. In addition, we reverse the Court's decision in *Arco* and reinstate the Department's decision disallowing deductions for sales of construction materials to the BIA and assessing penalties for the failure to pay taxes on the sales.

**IT IS SO ORDERED.**

MONTGOMERY and FRANCHINI, JJ., concur.

---

4. The BIA, rather than the tribes, made the financial contributions to the road projects, and the burden of the taxes thus fell upon the federal government.