**Certiorari Granted, No. 31,416, January 6, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-005**

**Filing Date:  October 30, 2008**

**Docket No. 27,922**

**CARLSBAD HOTEL ASSOCIATES, L.L.C.,**

    **Plaintiff-Appellee,**

**v.**

**PATTERSON-UTI DRILLING COMPANY,
L.P., L.L.L.P.,**

    **Defendant-Appellant,**

**and**

**CHI OPERATING, INC.,**

    **Defendant.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY
Jane Shuler Gray, District Judge**

McCormick, Caraway & Tabor, L.L.P.
John M. Caraway
Carlsbad, NM

for Appellee

Hatch, Allen & Shepherd, P.A.
Donna L. Chapman-Brown
Amy M. Cardwell
Albuquerque, NM

for Appellant

**OPINION**

**SUTIN, Chief Judge.**

**{1}**     The Fifth Judicial District Court provided an opportunity to the parties to engage in a court-sponsored settlement conference pursuant to a local settlement conference rule. Once the parties agreed to participate, they became subject to both the local rule and to a court order, which both required good faith participation. Defendant Patterson-UTI Drilling Company, LP, LLLP (Patterson) determined in advance of the settlement conference that it had no liability and entered the settlement conference with no intention of settling. At the conference, Patterson offered an amount only under the threat of sanction. The district court judge presiding in the case, referred to hereafter as "the district court," sanctioned Patterson for bad faith participation, based on (1) Patterson's failure in advance of the settlement conference to notify Plaintiff Carlsbad Hotel Associates, L.L.C. (the Hotel) and a co-Defendant, Chi Operating, Inc. (Chi), that it had determined that it had no liability and did not intend to make any offer to settle; (2) Patterson's failure to make an offer except upon threat of court sanction by the facilitator; and (3) Patterson's failure to further compromise from the offer it made under threat of sanction. This case requires us to consider the propriety of the sanction imposed against Patterson for violation of the local rule and the court order. Although we express some concerns about the requirement of good faith in general in the mediation context and its meaning in particular in the same context, we affirm the sanction because the order to which Patterson agreed defined good faith in a manner pursuant to which the district court could have properly found that Patterson was in violation.

**INTRODUCTION**

**{2}**     Several insightful articles in the last several years have addressed the propriety of court rules requiring good faith participation in court-affiliated mediations and settlement conferences and the propriety of allowing courts to sanction participants for the failure to negotiate in good faith. In the eyes of several practitioners and academics, the application of a good faith requirement and the imposition of sanctions can be overly problematic. *See* James J. Alfini et al., *Mediation Theory and Practice* 287-314 (Matthew Bender & Co., Inc. ed., 2d ed. 2006); Carrie Menkel-Meadow et al., *Mediation: Practice, Policy, and Ethics* 301-11 (2006); Stephen J. Ware, *Principles of Alternative Dispute Resolution* § 4.30, at 335-37 (2d ed. 2001); Roger L. Carter, *Oh, Ye of Little (Good) Faith: Questions, Concerns and Commentary on Efforts to Regulate Participant Conduct in Mediations*, 2002 J. Disp. Resol. 367; Carol L. Izumi & Homer C. La Rue, *Prohibiting "Good Faith" Reports Under the Uniform Mediation Act: Keeping the Adjudication Camel Out of the Mediation Tent*, 2003 J. Disp. Resol. 67; John Lande, *Using Dispute System Design Methods to Promote Good-Faith Participation in Court-Connected Mediation Programs*, 50 UCLA L. Rev. 69 (2002); ABA Sec. of Disp. Resol., *Resolution on Good Faith Requirements for Mediators and Mediation Advocates in Court-Mandated Mediation Programs* (Aug. 7, 2004), http://www.abanet.org/dispute/draftres2.doc (listing articles on the subject).

2

**{3}** As indicated by one effective writer on the subject, "[r]ules . . . that permit courts to sanction a wide range of subjective behavior create a grave risk of undermining core values of mediation and creating unintended problems." John Lande, *Why a Good-Faith Requirement Is a Bad Idea for Mediation*, 23 Alternatives to High Cost Litig. 1, 9 (2005). A resolution of the American Bar Association Section of Dispute Resolution advocates examination and revision of rules authorizing sanctions for bad faith conduct in court-mandated mediation programs in order "to preserve the core values of the mediation process, namely, party self-determination, mediator impartiality, and mediation confidentiality." ABA, *supra*.

**{4}** Competing views exist as to the benefit or detriment of a good faith participation requirement in court-affiliated mediations and settlement conferences, even in those with which the parties have voluntarily agreed. There are several policies favoring a good faith participation requirement. "The call for good-faith in mediation is premised on the need to ensure that the court-ordered process is not a waste of time, that it is at least possible to achieve a collaborative resolution, and that mediation is not misused. Furthermore, some suggest that to the extent that courts order participation and parties devote resources to it, society should protect the integrity of the process." Menkel-Meadow, *supra*, at 301; *see also* Lande, *supra*, 50 UCLA L. Rev. at 74 (pointing out the views that courts want to ensure that the time and money spent for mediation are well spent and that stakeholders also want to ensure maintenance of the integrity of the court-affiliated mediation programs).

**{5}** However, there exist a number of concerns about and policies disfavoring a good faith participation requirement. These are addressed in the articles listed earlier in this opinion. There are problems defining "good faith" and wrestling with subjectivity, and with commensurate concerns about adequate notice to the parties for what they can be sanctioned. In addition, requiring facilitators to report bad faith can compromise their facilitative and neutral roles and can produce unwanted incursion into confidentiality. Also, the sanction possibility gives one party a weapon against the other, thus encouraging, if not increasing adversarial behavior. Furthermore, the enforcement of sanctions creates satellite litigation resulting in more time and costs, something that mediation is meant to reduce. Also prominent is an overriding notion of a party's right to access to the court to have a claim resolved by a jury, together with the party's right to control how the case is presented, with no limitations by coercion or threat of sanction. Finally, because mediations are not on the record, a party and the facilitator may disagree on what occurred. A hearing to take evidence on what occurred not only invades confidentiality, it is likely to produce conflicting views of what occurred in the mediation. This conflict would raise fact and credibility issues which, in turn, would raise questions whether the facilitator, whose view of what occurred in mediation would be in play, can in fairness sit in judgment.

**{6}** In the present case, neither the local rule nor the order discusses whether the settlement conference was to be conducted in a manner consistent with norms and the principles of mediation, which require neutrality and impartiality of mediators, strict

confidentiality, voluntary settlements, and self-determination (that is, the right of the parties to control whether an offer is made and the amount of any offer). *See* Izumi, *supra*, at 80-87; Alfini, *supra*, at 298-99, 312 (questioning, in the author's review of *Pitman v. Brinker Int'l*, 216 F.R.D. 481 (D. Ariz. 2003), whether different standards should apply to a judicial settlement conference conducted by a federal magistrate, on the one hand, and a mediation, on the other).

**{7}** Our analysis and determination in this case is driven, however, by the particular scheme into which the parties chose to enter. In this case, all parties agreed voluntarily to a settlement conference; consequently the district court issued an order providing for such a conference, thus bringing the proceeding within the sphere of the court's local rule on good faith negotiations. Under these circumstances, it is clear to us that Patterson was bound by the requirements of the local rule and order and can complain only if it is able to show that the court erred in the application and enforcement of its local rule and order. We hold that Patterson has not made that showing and that the court did not err. We also hold that Patterson cannot complain about the facilitator's role in acting essentially as a hearing officer on the question whether sanctions were appropriate.

**BACKGROUND**

**{8}** The Hotel sued Patterson and Chi seeking loss of business damages allegedly resulting from a gas well blowout and subsequent emergency evacuation in Carlsbad, New Mexico. Patterson and Chi filed cross-claims against each other. At a Rule 1-016 NMRA scheduling conference in October 2004, the parties agreed to participate in a settlement conference pursuant to the district court's local rule LR5-205 NMRA. LR5-205(A) provides that "[a] settlement conference will be ordered if the trial judge deems it to be appropriate or after agreement by counsel that such a conference may result in a settlement of some or all of the issues in the case." The court ordered the parties to contact another judge in the same judicial district, Judge Currier, to conduct the settlement conference pursuant to LR5-205. *See* LR5-205(A) ("[A] settlement conference may be conducted by a judge of this district who is not assigned to the case[.]"). Pursuant to LR5-205(C), Judge Currier was expected "to promote a settlement" and was charged with the responsibility of being "an active participant in the conference."

**{9}** The court thereafter entered an order in which it referred the matter to Judge Currier for the settlement conference, set the conference for February 2005, required that each party send to Judge Currier, but not to the opposing party, a letter or memorandum summarizing the issues and giving an appraisal of the strengths and weaknesses of the positions of all the parties in the case. The order also required good faith participation, as follows:

> All parties shall have settlement authority and shall participate at the
> settlement conference in good faith. This means that, absent truly unusual
> circumstances, the parties will be expected to compromise from their last
> offer. Sanctions may be imposed if a party does not participate in the

4

settlement conference in good faith.

LR5-205(B) similarly requires good faith participation:

> All parties shall participate at the settlement conference in good faith and sanctions shall be imposed if the settlement conference judge finds that a party has not participated in good faith in the settlement conference, and the trial judge adopts the findings made by the settlement conference judge.

**{10}** Patterson submitted a "confidential position paper" that included an accountant's report indicating that the Hotel's damages were overvalued and that its damages were approximately $9140. This report was also given to the parties before the settlement conference. Patterson represents that it also explained "its position of no liability to Judge Currier . . . in the confidential mediation position paper."

**{11}** From all appearances, Patterson and the Hotel did not exchange any settlement offers. Chi, who had already settled with several hundred claimants in other lawsuits or non-litigation settlements, offered $10,000 before the settlement conference. The Hotel's demand at the conference was approximately $32,000, which did not include an amount for punitive damages. At the settlement conference, Patterson stated that it had no liability and it made no initial offer. Judge Currier reminded Patterson of the district court's order and informed Patterson that he thought it was violating the order by not participating in the process in good faith. Based on Judge Currier's own assessment of Patterson's risk, Judge Currier insisted that Patterson make an offer and reminded it again of bad faith. After a threat of sanctions, Patterson offered $1000 toward settlement. Judge Currier informed Patterson that he did not believe $1000 would satisfy its duty to participate in good faith. Patterson represented that if the other parties were close to settlement, refusing to specify what it meant by "close," it might be willing to contribute enough to settle the case. After consulting with Chi and to follow up on Patterson's representation, Judge Currier asked Patterson if it would be willing to pay $5000 to get the case settled. The Patterson representative indicated that he would do so if Judge Currier could guarantee that the $5000 would produce a settlement. Judge Currier would not make the guarantee, but he indicated that he was confident the case would settle with an additional $5000 from Patterson. Nonetheless, Patterson made no further offers, and the settlement conference ended without reaching a settlement after about five hours of mediation.

**{12}** After the conference, Judge Currier submitted a sealed, written report of findings to the district court that indicated Patterson had refused to participate in the settlement conference in good faith. In addition, the Hotel and Chi moved for sanctions against Patterson and asked for reimbursement for the costs of their representatives to attend the conference and for attorney fees.

**{13}** After reviewing the matter, the district court instructed Judge Currier to conduct a hearing to determine the good faith issue under the local rule and the court's order and to

enter sanctions if appropriate. Patterson then filed a motion requesting that Judge Currier be recused from hearing the pending motions for sanctions (1) because in his role as mediator he had recommended sanctions, (2) because he had personal knowledge of the disputed evidentiary facts concerning the mediation, and (3) because he was a material witness whose testimony may have been required for the hearing on the motions for sanctions. The district court denied Patterson's motion, and Judge Currier heard the motions for sanctions on July 1, 2005.

**{14}** At the outset of the hearing on the motions, when asked by Patterson in what capacity he was acting, Judge Currier explained that he had acted in the matter as a mediator but in conducting the hearing on the issue of bad faith he was acting as a judge, comparing the process to that of a judge who is deciding an issue of direct contempt. Judge Currier pointed out, too, that Patterson offered $1000 only after he had told Patterson's representative that he would be held in contempt if Patterson did not make an offer. Further, Judge Currier stated that he "consider[ed] $1000 to be merely a token." Judge Currier reaffirmed the conclusions he had reached during the settlement conference, namely:

> 1.    Patterson agreed to mediate and knew the contents of the court order four months prior to the mediation.
>
> 2.    Patterson came unwilling and unprepared to settle, short of an unconditional dismissal.
>
> 3.    [The Patterson representative] was not a person with full settlement authority and demonstrated a level of disregard if not arrogance for the mediation process that I have not previously witnessed. The conduct of [the Patterson representative] and Patterson also showed disrespect for the other participants.
>
> 4.    [The Patterson representative] was warned on at least three occasions that Patterson was not participating in the mediation process in good faith.

**{15}** At the end of the sanctions hearing, Judge Currier indicated that the problem he saw with Patterson's conduct was that Patterson had determined by early November 2004 that it had no liability and that it did not intend to offer any money, but waited until the settlement conference to disclose this position to the other parties. Judge Currier stated that he believed Patterson was using the settlement conference merely for the purpose of discovery "to find out what it was that the other side had that they could point a finger at in regard to Patterson."

**{16}** After the hearing on the motions for sanctions, Judge Currier entered an order indicating that "the [c]ourt [had] read its findings into the record regarding the mediation" and stating that Patterson had "conducted itself in bad faith at the mediation." Afterward, Judge Currier entered a supplemental order that required Patterson to pay the Hotel

$5,156.67, which represented attorney fees and the wages of the employees who attended the conference, as a sanction for participating in the settlement conference in bad faith. Patterson appealed that order. Judge Currier also ordered that Patterson pay sanctions to Chi; however, those sanctions are not before us on appeal.

**{17}** While Patterson's appeal was on this Court's summary calendar (proposing dismissal for lack of a final order), the case settled with Chi paying $17,500 and Patterson paying $1000. Before settling, however, the Hotel filed a motion requesting the district court to adopt the findings and decision by Judge Currier and thereby to impose the sanctions in Judge Currier's order against Patterson. The district court heard argument on the sanctions; listened to the record made at the hearing conducted by Judge Currier on July 1, 2005, which included Judge Currier's view of what occurred at the settlement conference, the Patterson representative's testimony, and statements of counsel; and ultimately agreed with Judge Currier.

**{18}** The district court entered an order adopting the findings and the decision of Judge Currier. The court stated that settlement conferences were not mandated, that they were instead "offered as essentially a service in efforts to facilitate settlement," and that "[n]o one has a 'gun to their head' requiring that any party agree to participate." The court further indicated that "when a settlement conference is agreeable to the parties, time, effort and attorney[] fees are necessarily expended in a good faith hope that settlement may be had. All that is required of any party is good faith." The court then stated:

> 8.  . . . [Judge] Currier found that Patterson determined from at least early November 2004 that it had no liability. And, in agreeing to participate in a settlement conference, Patterson did not disclose to the other parties that it intended to offer no monies whatsoever in settlement. Therefore, from fall of 2004 through early February Patterson allowed the other litigants to expect and believe that settlement by Patterson was at least a possibility.

> 9.  [Judge] Currier further stated . . . that Patterson used the settlement process merely for discovery: "to find out what it was that the other side had that they could point a finger at in regard to Patterson."

> . . . .

> 11.  [Judge] Currier noted that it would have been entirely reasonable for Patterson to express that it had nothing to offer based on [its] belief of no liability. Such would have been entirely within Patterson's right–and ultimately, it was Patterson's obligation to do so.

> 12.  Patterson argues that to impose sanctions would have a chilling effect on the settlement process, arguing that [Judge] Currier was

7

trying to impose a judicially determined amount for purposes of settlement.
. . .

> 13.     However, Patterson entirely misses the point with regard to the reason for imposition of sanctions. . . . Patterson put all parties through an exercise in futility by virtue of agreeing to such a conference. The amount of money–the $1,000–was extracted only after threat by [Judge] Currier to impose sanctions.

Based on these and other findings of fact, and after adopting Judge Currier's findings and decision "in full," the district court ordered that Patterson immediately pay the Hotel the sanctions recommended by Judge Currier.

**{19}** Patterson appeals the supplemental order of Judge Currier and the district court's order that required it to pay sanctions. First, Patterson contends that the court erred because "[failure] to offer a judicially determined settlement amount does not constitute bad faith warranting the imposition of sanctions." Second, Patterson contends that it was improper for Judge Currier, as mediator, to preside as a judge at the hearing on the motions for sanctions.

## DISCUSSION

### Sanctions

### Standard of Review

**{20}** There are no New Mexico cases addressing the imposition of sanctions for bad faith participation in a settlement conference or mediation. The parties to this appeal agree that we review whether the district court properly sanctioned Patterson by using the abuse of discretion standard. Patterson likens the issue to the review of the imposition of Rule 1-011 NMRA sanctions, as in *Rangel v. Save Mart, Inc.*, 2006-NMCA-120, ¶ 12, 140 N.M. 395, 142 P.3d 983. Similarly, the Hotel compares the sanctions in this case to the imposition of discovery sanctions under Rule 1-037 NMRA, as in *Gonzales v. Surgidev Corp.*, 120 N.M. 151, 156-58, 899 P.2d 594, 599-601 (1995).

**{21}** An abuse of discretion occurs "when the court's decision is without logic or reason, or . . . clearly unable to be defended." *Id.* at 157, 899 P.2d at 600 (alteration in original) (internal quotation marks and citation omitted). A district court abuses its discretion if its ruling is based on an erroneous view of the law. *Rangel*, 2006-NMCA-120, ¶ 12. "It is not the function of a reviewing court to substitute its own interpretation of a local rule for that of the court which promulgated the rule." *James v. Brumlop*, 94 N.M. 291, 295, 609 P.2d 1247, 1251 (Ct. App.1980).

### The Sanctions Were Not an Abuse of Discretion

**{22}** Patterson argues that the district court erred by construing the good faith requirement to require Patterson "to accept a judicially predetermined amount for settlement, in excess of the amount Patterson believed to be the settlement value of [the] case." Patterson relies on federal case law to support its position, particularly the case of *Dawson v. United States*, 68 F.3d 886, 887 (5th Cir. 1995), which overturned sanctions for failing to offer to settle pursuant to a local rule requiring a "good-faith effort to settle." In support of the sanctions, the Hotel refers to sanctions available under the inherent power of the court to control its docket, *see, e.g.*, *Gonzales*, 120 N.M. at 154-55, 157, 899 P.2d at 597-98, 600, as well as to Rule 1-016(F) NMRA which governs sanctions related to pretrial conferences. *See* LR5-205(A) (stating that under Rule 1-016 "a settlement conference may be conducted by a judge of this district").

**{23}** The extraction of coerced settlement offers through threat of sanctions can be acceptable, if at all, only in extremely limited circumstances. The present case puts this principle to the test. We believe that, under the specific circumstances of this case, the decisions of Judge Currier and the district court may stand. It is the specific circumstances in this case that set this case apart from *Dawson* and other cases that disfavor sanctions imposed for lack of good faith participation. Contrary to the implication in the dissenting opinion, this case is not about a judicially predetermined settlement amount, which is Patterson's sole position on appeal. It is also not about a party that came to a settlement prepared to compromise in any voluntary way; the court below found on the basis of the facts before it that Patterson made its first offer only under threat of sanction. The conclusions in the dissenting opinion therefore appear to us to be refinding the facts, something an appellate court should not do. *See, e.g.*, *Blaze Constr. Co., Inc. v. Taxation & Revenue Dep't*, 118 N.M. 647, 653, 884 P.2d 803, 809 (1994); *Clayton v. Trotter*, 110 N.M. 369, 371, 796 P.2d 262, 264 (Ct. App. 1990). Instead, this is a case about a party who had no intention of ever settling, who put the parties and the court through the expense of a futile settlement facilitation, and who would only offer a token amount after a warning and threat of sanctions.

**{24}** Here, the settlement conference was not mandated. The parties expressly agreed to participate in a settlement conference and to do so in good faith. They understood that the conference was governed by the express good faith requirement in LR5-205(B) and in the court order for the settlement conference. The rule and the order required not only good faith participation, but the order explicitly informed the participants that "absent truly unusual circumstances" they were "expected to compromise from their last offer." Furthermore, they knew that another district court judge would act as the facilitator who was not only "expected to promote a settlement" but was affirmatively charged with the responsibility of being "an active participant in the conference." LR5-205(C). The district court carried the power to sanction by rule and by court order, as well as by its inherent power.

**{25}** At the same time, Patterson was a sophisticated participant and should have been aware based on the language of the rule and the order that it was entering into a settlement

9

conference with the possibility, if not likelihood, that it would be required to make a bona fide effort to reach a compromise. Further, Patterson should have been aware that the facilitator would engage in an evaluative process and press Patterson to make an offer that the facilitator would believe was made in a good faith effort to compromise. The ambiguity, lack of restricted and definite meaning, and subjective nature of the words "good faith" and "compromise from the last offer" can be no defense to Patterson in this case because Patterson has not raised those questionable characteristics of the rule or the order as a basis of error or for reversal. In fact, Patterson raises no issue of lack of fair or reasonable notice of what conduct was sanctionable, and Patterson nowhere argues that it was not given reasonable or fair notice that its conduct in this case would be subject to sanctions.

**{26}**    While we question the wisdom of placing in a settlement conference rule or order a good faith requirement or a requirement that a party compromise from the last offer, we see no basis on which to hold that the court erred in requiring Patterson upon threat of sanction to make an initial offer. We also see no basis on which to hold that the court erred in sanctioning Patterson for coming into the conference with no intent to make any offer and then for refusing to compromise further after making the initial offer. With LR5-205 in place and the court's order agreed to, we cannot say that Judge Currier or the district court acted arbitrarily, capriciously, against reason or logic, or under an erroneous view of the law. Judge Currier and the district court acted within the parameters of the rule and the order. Patterson does not argue that any particular constitutional or statutory provision or any other law was violated by Judge Currier or the district court in considering the good faith of Patterson. Patterson, in our view, agreed to the rules of the game established in the local rule and the court order, and we cannot say that the district court abused its discretion in ruling that Patterson did not act in good faith and was subject to sanctions.

**Judge Currier Could Entertain the Motions for Sanctions**

**{27}**    Patterson argues that it was improper for Judge Currier to preside as judge at the hearing on the Hotel's motion for sanctions. Patterson takes the standard of review to be that of abuse of discretion. We see the issue to be whether the district court abused its discretion in selecting Judge Currier to consider whether sanctions were appropriate. As indicated earlier in this opinion, an abuse of discretion occurs when the court's decision is without logic or reason, is clearly unable to be defended, or is based on an erroneous view of the law. *See Gonzales*, 120 N.M. at 157, 899 P.2d at 600; *Rangel*, 2006-NMCA-120, ¶ 12.

**{28}**    The settlement conference was to be confidential and is not of record on appeal except to the extent of recollections of what occurred as recounted in the July 1, 2005, hearing. Thus, confidentiality was arguably breached in the hearing and then when Judge Currier reported what occurred in the settlement conference to the district court. Further, although the July 1, 2005, hearing was sequestered and sealed "except as to the Appellate Courts and counsel for Patterson," the briefs of both parties cite portions of the hearing, and the Hotel cites portions of the hearing from which it was excluded; the Hotel thus apparently has had access to the record of the hearing. Because the case has settled and the parties both

10

cite the hearing, we conclude that the parties have waived settlement conference confidentiality.

**{29}** It is fair to question the wisdom, if not the fairness, of having a mediator or settlement facilitator also sit as a district court judge in ultimate judgment of credibility, factual disputes, and law on the issues of good faith and sanctions. We do not, however, see the need to address this concern in this case. We construe the district court's assignment of Judge Currier to hold a hearing on the motions for sanctions to be an assignment to act essentially as a hearing officer. Although the tenor of Judge Currier's rulings took on an air of judicial finality, his rulings were treated by the district court as recommendations. The district court conducted its own, independent review of the proceedings and came to its own independent conclusions in regard to the circumstances and the justification for sanctions. Because the final analysis and decision on sanctions were made by the district court, we reject Patterson's arguments that allowing the process "would fly in the face" of Rule 1-088.1(D) NMRA and Rule 21-400(A)(1), (3), (4), and (6)(a) NMRA, relating to district judge recusal when a judge's impartiality is in question. Nor do we see a due process violation under the New Mexico Constitution, article II, section 18 as is also argued by Patterson. Furthermore we maintain our view that Patterson agreed to and was bound by the process contemplated under the local rule and the court order.

**{30}** In conclusion, while we think that the process employed here, of utilizing the facilitator as a hearing officer on the issue of good faith, is somewhat troubling, we cannot say that the district court abused its discretion in permitting Judge Currier to hear the motions for sanctions when, in the final analysis, the district court conducted its own full-record review and independently concluded that sanctions were appropriate.

**The Mediation Procedures Act**

**{31}** While it does not control the outcome of this case, we note that subsequent to the settlement conference in this case the New Mexico State Legislature passed the Mediation Procedures Act (the Act), NMSA 1978, §§ 44-7B-1 to -6 (2007). This Act governs "mediation[s] in which . . . the mediation parties are required to mediate by statute or court or administrative agency rule or are referred to mediation by a court, administrative agency or arbitrator[.]" Section 44-7B-3(A)(1). The Act also covers circumstances where the parties and mediator agree to mediate as long as the agreement "is evidenced by a record that is signed by the mediation parties." Section 44-7B-3(A)(2). The Act nowhere requires good faith participation or provides for sanctions for failing to act in good faith. *See* §§ 44-7B-1 to -6. Further, the Act contains the following confidentiality provision: "Except as otherwise provided in the [Act] or by applicable judicial court rules, all mediation communications are confidential, and not subject to disclosure and shall not be used as evidence in any proceeding." Section 44-7B-4. While the Act contains exceptions to the confidentiality provision, there is no exception for use to determine whether a party participated in the mediation in good faith. *See* § 44-7B-5. We offer no view here as to whether the scope of the Act is intended to include rules such as LR5-205 or orders such as

11

that entered in the present case.

**CONCLUSION**

**{32}** We affirm the district court's sanctions against Patterson. The parties will bear their own attorney fees and costs on appeal. We wish to emphasize that we affirm because we see no constitutional, statutory, common law, or equity basis on which to reverse. We respectfully hope that the Fifth Judicial District Court, as well as other district courts throughout the State that have a good faith requirement similar to or the same as that of the Fifth Judicial District Court, consider the elimination of the good faith requirement in their court-facilitated settlement programs. We also respectfully suggest that, under its rule-making and rule-approval authority and its power of superintending control, as well as its authority to decide procedural matters based on policy considerations, our Supreme Court disapprove any future rules containing a good faith requirement and enter an order requiring existing rules to delete that requirement.

**{33}** **IT IS SO ORDERED.**

                                               **JONATHAN B. SUTIN, Chief Judge**

**I CONCUR:**

**LYNN PICKARD, Judge**

**RODERICK T. KENNEDY, Judge (dissenting).**

**KENNEDY, Judge (dissenting).**

**{34}** "Buy the ticket, take the ride." The majority affirm by resting on the facts that not only did Patterson agree to this seriously flawed process but later failed to make arguments that might have been persuasive, if not dispositive, in its favor. Patterson having thus acquiesced in its own demise, the majority feel compelled to affirm the sanctions entered against Patterson. The district court found that Patterson argued that imposing sanctions would chill the settlement process and that Judge Currier "was trying to impose a judicially determined amount for purposes of settlement." I believe that this is the nub of this case, and I disagree with the majority's direction—that there is no abuse of discretion in sanctioning a litigant for having no intention to settle a case where the judicial settlement facilitator finds the offers that are ultimately made at his insistence to be unacceptable.

**{35}** I concur in the majority's invitation to the Supreme Court and the district courts to re-evaluate this rule and similar rules promoting such coercive use of "settlement

12

conferences." Mediation as contemplated by New Mexico's new Mediation Procedures Act is an important tool. However, I believe that the district court's and majority's use of the term "mediation" is inappropriate in describing anything that happened in this case.[1] I therefore refer to the "settlement conference" or "conference." The problem with the procedure in this case is that it is not mediation, it is not arbitration, but it imposes requirements on the parties in excess of the former without enforcing the procedural conditions of the latter. Perhaps the local rule provides for consistency, but in this case, imposing the requirement to compromise was an invitation to judicial overreaching. The threat of sanction if a party does not compromise further when the facilitating judge demands it steps outside of both the local rule and acceptable legal norms.

{36}     It is true that Patterson had the order defining "good faith" in its possession for some months prior to the settlement conference. Patterson did not object that the order went beyond the local rule's mentioning of "good faith" to defining good faith as acceptance of forced settlement regardless of the merits of Patterson's position. Patterson did not complain that as the order was written "good faith" was to be a thoroughly subjective evaluation by the settlement facilitator that would leave Patterson bereft of any meaningful notice as to what behavior on its part might trigger sanctions. The majority imply that due to the order, Patterson knew a failure to "compromise" its previous position of "no liability" would be regarded as not participating in good faith. The majority should not rest their case on Patterson's "intent" not to settle being sanctionable when, as described below, Patterson compromised its intent, whatever it was , with two settlement offers.

{37}     It was clear under the local rule that Judge Currier would be an "active participant" who would "promote a settlement" as in previous conferences he had conducted. The majority state that the standard of conduct might have been ambiguous but that Patterson did not raise ambiguity as an argument. I believe that the standard of conduct required by the local rule and order was not ambiguous, that Patterson complied sufficiently to satisfy the order's requirement to "compromise," and that the facilitator's arbitrary conduct exceeded the scope and powers conferred by the rule, resulting in an abuse of discretion—the sanctioning of Patterson. I therefore dissent.

**The Rule and the Order Are Not Ambiguous**

{38}     I disagree that the language "compromise from the last offer" in the order is at all ambiguous, subjective, or lacking in restrictive meaning. The language is quite clear. The order also gave notice of what would be subject to sanctions: failing to "compromise from [a party's] last offer." Relying, as the facilitator and district court did, on Patterson's lacking the intent to make an offer from the initial days of the case through the start of the conference says nothing about its good faith because, as Patterson underscores, *it made an*

---

[1] The majority opinion's Introduction more than adequately notes the underlying attributes of mediation against which this process cannot measure up.

*offer*. Patterson compromised "from [its] last offer" upon offering $1000 at the settlement conference. When asked for yet more money, again under threat of the facilitator's contempt power, Patterson agreed to $5000 but conditioned its agreement on the sum being sufficient to settle the case. Thus, "bad faith" became part and parcel of a $4000 disagreement between the facilitator and Patterson once the facilitator unilaterally rejected Patterson's $1000 and insisted on a larger sum.

{39}    The facilitator's statement in the later hearing when he reviewed his order of sanctions for bad faith was that offering $1000 "is tantamount to offering nothing. The court determines this to be bad faith[.]" However, $1000 is not "nothing," and Patterson argued below that having made the offer satisfied its obligation to compromise. Neither the local rule nor the order cloak the facilitator's idea of a proper amount with validity or even presumptive reasonableness, nor does either require any party to accept the facilitator's evaluation of the case's merits. The majority say that Patterson was obligated to play by "the rules of the game." That proposition should apply equally to the court that issued the order and to the facilitator who both knew of Patterson's pre-conference position prior to the conference and was empowered by the order setting the terms of the conference. Contrary to the majority's position, Patterson had no obligation to change its intent before the conference. The order imposed the obligation to compromise on the parties for purposes of the conference. Resistance to arbitrary demands by the facilitator thus improperly becomes a subjective measure of bad faith. Patterson's conduct shows objectively that the requirement of compromising from its last offer was fulfilled.

**A Facilitator's Insistence on a Specific Amount to Settle Is Improper**

{40}    Patterson stated its position of no liability in the "confidential position paper" it submitted to Judge Currier, which the other parties also received. Patterson also made its no-liability position clear at the outset of the conference and made no initial offer. Patterson was therefore sanctioned for participating in the mediation when it had "no intent" to settle and for misleading the other parties to believe there was "at least a possibility" of settlement. Objectively, through its conduct, Patterson clearly abandoned acting on its intent, and that intent is irrelevant. That Patterson's offering $1000 "only after" being threatened with sanctions should become the conclusive evidence of its bad faith is unjust. Patterson made an offer and made its next offer contingent upon an assurance, rather than upon Judge Currier's belief that the amount would settle the case. Objectively, Patterson compromised, and then it objectively demonstrated its willingness to compromise further. This is not bad faith, and the majority substitute inchoate "intent" for objective acts on Patterson's part to justify the sanctions. I cannot concur with doing so when the facts are plainly before us.

{41}    Court-annexed mandatory arbitration in New Mexico also requires good faith. One writer suggests that good faith determinations rest upon requiring only that "[e]ach party must be prepared to discuss his position on the issues presented by the case and to commit the party to a particular position in the litigation but should not be required to make a settlement offer or counteroffer." William Lynch, *Problems With Court-Annexed Mandatory*

14

*Arbitration: Illustrations From the New Mexico Experience*, 32 N.M. L. Rev. 181, 203 (2002). The rationale for this view is that "[t]he parties must be assured that they can forcefully argue their positions (i.e., that there is no liability, or that plaintiff's claim is not worth more than a certain sum) during the arbitration without the threat of sanctions being imposed." *Id.* at 199.

**{42}** Compromising from one's previous position was contemplated by the parties to the settlement conference as an integral part of the district court's order. Under this standard, an objective evaluation would inquire whether a party made a subsequent offer. Being sanctioned for resisting when the facilitating judge demands a larger offer chills the rights of each litigant to make its own determination as to whether a settlement is advantageous. Insisting on another offer is an action that I must regard as exceeding the power of the judge and abusing his discretion under the local rule and the district court's order. The majority do not address the question of whether a party has an absolute right to refuse to settle a claim or whether exercising such refusal can be sanctioned. *See Kamaunu v. Kaaea*, 56 P.3d 734, 743 (Haw. Ct. App. 2002) ("We view with disfavor all pressure tactics whether directly or obliquely, to coerce settlement by litigants and their counsel. Failure to concur in what the [judge] presiding may consider an adequate settlement should not result in an imposition upon a litigant or [litigant's] counsel, who reject [sic] it, of any retributive sanctions not specifically authorized by law."). I believe a party has the right to refuse to settle.

**{43}** I also regard the facilitating judge's imposition of a bad faith sanction for not following his order to settle for a particular amount as outside the scope of LR5-205. This local rule requires of the facilitating judge "a frank appraisal of the judge's opinion of the strengths and weaknesses of [each party's] case, including the judge's appraisal of the value of the lawsuit." LR5-205(H). After iterating along this line, LR5-205(J) first requires that the judge address all parties with an "opinion" of the case and "a fair settlement" value and then allows "[t]he parties . . . to confer with each other to see if an agreement can be reached." Thus, the rule authorizes the facilitating judge to say what the judge believes the case is worth but leaves to the parties the decision on whether to agree. The facilitator is not given the authority to impose a settlement value on the litigants using the lever of sanctions for bad faith. The rule does not contemplate the facilitator ordering a party to make a larger offer, and neither does the district court's order. The order's requirement of the parties was no more than to "compromise from their last offer."

**{44}** Patterson cites *Dawson v. United States*, 68 F.3d 886, 896 (5th Cir. 1995), in arguing against the imposition of a good faith standard as a basis for sanctions. *Dawson* maintains and Patterson argues that a district judge's disagreement with the merits of a settlement position asserted in good faith by a party cannot underlie an order imposing sanctions. *Id. Halaby, McCrea & Cross v. Hoffman*, 831 P.2d 902, 908 (Colo.1992), held that the "'adequate' amount of settlement authority will vary based on the circumstances of each case, and a settlement conference judge should not impose sanctions because, in his opinion, the amount is insufficient." In *Halaby*, the Colorado Supreme Court granted a writ of prohibition preventing the imposition of sanctions in a case such as this where the facilitator

imposed sanctions when the party's offer of a minimal sum ended the settlement conference. *Id.* at 904-05. The facilitator asserted positions almost identical to those in this case, referring to the hours spent by the parties and the nominal amount of the offer. *Id.* Alas, Patterson did not cite *Halaby* or *Kamaunu*.

**{45}** For us to uphold the sanction because the facilitator "acted within the parameters of the rule and the order" ignores the fact that Patterson also fulfilled its obligation under the order. It also ignores that the determination of bad faith is rooted in either Patterson's original intent not to settle, which Patterson obviously abandoned, or in no more than the facilitator's unsupported determination that the $1000 offer should have been increased by $4000, with no assurance that he would impose his "opinion" of a settlement value similarly on the other parties if they did not accept it. That is arbitrary behavior on the part of the facilitator, and it is an abuse of the court's discretion to sanction Patterson absent an objective criterion upon which to place any faith in the dollar amounts demanded by the facilitator.

**{46}** If such "active participation" of a facilitator is allowed, the facilitator must bear some responsibility to demonstrate that any attempts to force a settlement are both objectively reasonable and equally applied to all participants. Here, that would require the facilitator to demonstrate in his findings that based on his representation of the sum's acceptability, and having insisted on an offer of $5000 from Patterson, that he similarly insisted under threat of sanction that the Hotel accept that sum. Such a demonstration is not made, and I would hold that the district court's affirmance of the sanctions constitutes an abuse of discretion equal to the facilitator's.

**The Facilitator Should Recuse From Judging His Own Sanction**

**{47}** Last, empowering a facilitator to don a judge's hat to rule on the propriety of his own conduct is the essence of apparent impropriety and unfairness and should not be countenanced. The district court's subsequent independent review should have been more skeptical.

**A Strain on Judicial Efficiency**

**{48}** Implementation of a rule such as LR5-205 with an order containing language as we saw here creates problems for court efficiency and control of the docket. The majority point out that this process has now been used in a second front of attack by Patterson's opponents, whose motions to sanction Patterson's conduct in the conference succeeded. Using subjective criteria to judge good or bad faith and then sanctioning a party as in this case engenders this sort of "satellite litigation" that negatively impacts the district court's claim to promoting economy and efficiency through alternative dispute resolution. Edward F. Sherman, *Court-Mandated Alternative Dispute Resolution: What Form of Participation Should Be Required?* 46 SMU L. Rev. 2079, 2093 (1993). Further, the clear message is that a party who believes it has no liability should not engage in a settlement conference under

a local rule or enabling order like this one, even if the possibility exists that such a party would acquire enough information to justify changing its position.

**RODERICK T. KENNEDY, Judge**

**Topic Index for** *Carlsbad Hotel Associates, LLC v. Patterson-UTI Drilling Co.***, No. 27,922**

**AE**        **Appeal and Error**
AE-SR      Standard of Review

**CP**        **Civil Procedure**
CP-SA      Sanctions
CP-SE      Settlements

**JG**        **Judges**
JG-AD      Abuse of Discretion

**MS**        **Miscellaneous Statutes**
MS-ME     Mediation Procedures Act